(June 16, 1909.)

W. H. LEGGETT, Respondent, v. C. E. EVANS, Appellant.

[102 Pac. 486.]

APPEAL—LACHES IN PROSECUTING—MOTION TO DISMISS—MOTION FOR A NEW TRIAL—REAL ESTATE AGENT—LIABILITY OF—VERDICT OF JURY —SUBSTANTIAL EVIDENCE TO SUSTAIN.

1. Showing held sufficient to exempt appellant from the charge of laches in prosecuting his appeal.

2. Where the transcript shows that a motion for a new trial was brought on to be heard, and the same was heard and denied by the court, and there is nothing in the record to show that the motion was not properly made and passed upon, this court will presume that it was properly made.

3. *Held*, that the evidence is sufficient to sustain the verdict of the jury.

4. Under the provisions of sec. 4824, Rev. Codes, 1909, where there is substantial evidence to sustain the verdict, it will not be set aside on appeal.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Edward A. Walters, Judge.

Action to recover damages for alleged failure to comply with a contract concerning the sale of real estate. Judgment for plaintiff. *Affirmed.*

John Kerr, and Stockslager & Bowen, for Appellant.

When a person acts and contracts avowedly as the agent of another, who is known as the principal, his acts and con-

tracts, within the scope of his authority, are considered the acts and contracts of the principal, and involve no personal liability on the part of the agent. (1 Am. & Eng. Ency. of Law, 2d ed., 1119; *Whitney v. Wyman*, 101 U. S. 392, 25 L. ed. 1050; *Engles v. Heatly*, 5 Cal. 135; *Lehman v. Feld*, 37 Fed. 852; *Merrill v. Williams*, 63 Cal. 70.) A principal must assume the obligations, if he wishes the benefit of an unauthorized contract made by an agent. (*St. John Mfg. Co. v. Munger*, 106 Mich. 90, 58 Am. St. 468, 64 N. W. 3, 29 L. R. A. 63; *Rackemann v. Riverbank Imp. Co.*, 167 Mass. 1, 57 Am. St. 427, 44 N. E. 990; *Andrews v. Robertson*, 111 Wis. 334, 87 Am. St. 870, 87 N. W. 190, 54 L. R. A. 673.)

If a person having no authority assumes to act as an agent, but his acts are afterward ratified by his principal, the agent cannot be sued on the contract, or for its breach, or for damages for want of authority. (*Sheffield v. Ladue*, 16 Minn. 388, 10 Am. Rep. 145.) One who without authority has assumed to act as agent for another, and as such agent has entered into a contract in the name of his assumed principal for the sale of the property of the latter, cannot be held liable on the contract for damages for its breach. (*Senter v. Monroe*, 77 Cal. 347, 19 Pac. 580; *Sheffield v. Ladue*, *supra;* 16 Ency. Pl. & Pr. 906.) Where one through mistake pays an agent money believed to be due the principal, and the agent received it and passed it into his principal's possession with the knowledge of the payer, such payer cannot maintain an action for the money so paid against the agent. (*Ashley v. Jennings*, 48 Mo. App. 142; *Shepard v. Sherin*, 43 Minn. 382, 45 N. W. 718; *Bailey v. Cornell*, 66 Mich. 107, 33 N. W. 50; *Shepard v. Sherin*, *supra*.) The notice of intention to move for new trial is set forth in the record. The statement could not contain any motion, and it is not required that it should. The record on appeal from an order denying a motion for a new trial consists of the judgment roll, statement with a copy of the order. (Rev. Codes, sec. 4443.) The order of the court recites that a motion was made and shows all that is necessary. (*Steve v. Bonners Ferry*

*L. Co.,* 13 Ida. 384, 92 Pac. 363.) The statutes of Utah relating to new trials are practically the same as in Idaho. (Secs. 3291-3299, Rev. Stat, 1898.) It has been held in Utah that the notice of intention to move for a new trial stands for the formal motion, and the questions may be ruled upon, although no motion is filed.

Sweeley & Sweeley, for Respondent.

Although a person is known to be acting as agent, yet if he makes the contract in his own name or personally assumes its obligations he is individually liable. (Clark on Contracts, p. 740; Page on Contracts, sec. 975; Bishop on Contracts. 2d ed., sec. 1077; *Murphy v. Helmrich,* 66 Cal. 69, 4 Pac. 958; *Dockarly v. Tillotson,* 64 Neb. 432, 89 N. W. 1050; Story on Agency, sec. 269 et seq., and notes; 1 Am. & Eng. Ency. Law, 2d ed., 1120.) "The mere appending of the word 'agent' to his signature will not save him." (Bishop on Contracts, sec. 1077, and cases cited in notes.)

A real estate agent or broker has no implied authority to receive money to apply on the sale, and if he receives it in the absence of express authority, he does so as agent of the purchaser, and is personally bound to make proper accounting. (Clark & Skyles on Agency, sec. 758; *Halsell v. Renfrow,* 14 Okl. 674, 78 Pac. 118.)

SULLIVAN, C. J.—This action was brought to recover damages. for alleged failure to comply with a contract concerning the sale of real estate. It is alleged in the complaint, in substance, that the defendant was a real estate agent; that in the month of April, 1907, he represented to the respondent, who is plaintiff, that he had authority to sell certain real estate situated in the town of Twin Falls, and proposed and offered to procure from the owners a deed conveying the clear title to said property to the plaintiff for $8,000; that the respondent accepted said proposition and paid .the appellant $5,000 to apply on the purchase price; that at the time of making said contract there was a mortgage upon said real estate, the amount of which was un-

known to the respondent, but that $8,000 was the contract price for a clear title to said real estate; that some time after the payment of said $5,000, the respondent paid $500 more on said contract; that it was the agreement that he could pay the balance of the purchase price at any time within two years from the date of said contract; that the respondent is now ready and willing to pay the balance of $2,500 of said purchase price, but that there remains $3,574.92 unpaid on said mortgage, and that there was unpaid taxes against said real estate, which was a lien thereon, of $136; that by reason of the matters and things set forth in said complaint and the failure of the defendant to procure a clear title to said real estate, plaintiff has been damaged in the sum of $1136. and prays for judgment for that amount.

The answer contains a denial of certain allegations of the complaint, and as a further defense sets up that the defendant was only an agent of the owners of said property, and that he had no dealings with the plaintiff in the sale of said real estate other than as the agent of the owners, and asked that the action be dismissed and that he be awarded his costs.

The cause was tried by the court with a jury and verdict and judgment rendered and entered against the defendant for the sum of $786.83. A motion for a new trial was made and overruled by the court and this appeal is from the order denying a new trial.

A motion has been made by counsel for appellant in this court to dismiss the appeal on two grounds: First, that the appeal was not taken within the time prescribed by the statute and rules of the court, and, second, that the appeal purports to be taken from an order overruling a motion for a new trial, but that no motion for a new trial was ever filed in said action.

It appears from the record that the judgment on the verdict was entered December 21, 1907; that by stipulation the defendant was given sixty days in which to prepare and serve a statement on motion for a new trial; that prior to the expiration of that period an order was made by the trial judge extending the time to March 15, 1908, and it appears

from the affidavit of appellant filed on this motion that on March 14, 1908, the proposed statement was mailed, postage prepaid, to counsel for respondent, at Twin Falls, Idaho; that respondent's counsel failed to file or serve any proposed amendments thereto, and on April 10, 1908, counsel for appellant wrote to respondent's counsel requesting information as to whether they desired to propose any amendments to said proposed statement, and if not, if they would agree to the settlement of the proposed statement; that under date of April 13, counsel for appellant received a letter from respondent's counsel requesting additional time to propose amendments, to which no objections were made by appellant, and thereafter further communications were had between respective counsel and no amendments were proposed until September 3, 1908, which amendments were accepted by counsel for appellant on September 22, 1908. Thereafter said proposed statement with amendments was engrossed and a copy sent to counsel for respondent with the request that the same be certified for settlement; that respondent's counsel returned said engrossed statement on October 5, 1908, and on October 16, 1908, counsel for appellant presented the same to the judge of said court for settlement and the judge settled the same, and on November 9, 1908, the order denying a new trial was made. The appeal was taken from said order on January 7th which was within sixty days after the order overruling the motion for a new trial was made, or within the time required by the provisions of sec. 4807, Rev. Codes.

It appears from the foregoing facts that counsel for respondent retained in his possession the proposed statement on motion for a new trial without proposing any amendments thereto from the 15th of March until September following, and his holding said proposed statement without proposing any amendments thereto was the cause of the delay for a period of about six months. That period of delay cannot be charged up to the appellant. Within a few days after the statement had been agreed to counsel for appellant placed it in the hands of the judge, who settled the same and over-

ruled the motion for a new trial shortly thereafter. In view of the showing made, we are fully satisfied that the appellants have prosecuted their appeal in good faith and have made a sufficient showing to exempt them from the rule announced in *McCrea v. McGrew*, 9 Ida. 382, 75 Pac. 67. (See, also, *Smith v. American Falls C. & P. Co.*, 15 Ida. 89, 95 Pac. 1059.) The facts presented bring the appellant within the exception announced in *Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist., ante,* p. 525, 102 Pac. 481.

The second ground of the motion for dismissing the appeal is that no motion for a new trial was ever filed in said action. A motion for a new trial is not required to be made a part of the judgment roll unless it is saved in a bill of exceptions or properly identified as a paper used on the hearing, and if a party desires to raise some question in regard to the motion for a new trial, proper exceptions must be saved and made a part of the transcript. The transcript in the case at bar as certified shows that a motion for a new trial was made and passed upon by the trial court or judge. That being a court of general jurisdiction, the presumption is that its acts were all regular, and that it would not pass upon a motion for a new trial unless such motion were made. No objection was raised in the court below that a motion for a new trial had not been properly made, and the judge recites in his order as follows: "The motion of the defendant in the above-entitled action asking that the verdict of the said cause be set aside and vacated and a new trial granted, the said action coming on to be heard this 9th day of Nov., 1908," etc., and that "It is hereby ordered that the said motion be and the same hereby is overruled." The record, therefore, on its face shows that a motion for a new trial was made. As bearing upon this question, see *State v. Wright*, 12 Ida. 212, 85 Pac. 493; *Stoddard v. Fox*, 15 Ida. 704, 99 Pac. 122. The presumptions are all in favor of the regularity of the proceedings of courts of general jurisdiction. The motion to dismiss the appeal is denied.

The only error assigned and presented on this appeal is that the court erred in not granting a new trial on the ground

of the insufficiency of the evidence to support the verdict. The appellant seeks to escape liability through the contention that he was acting only as agent and within the scope of his authority, and that his principals are the ones liable to the plaintiff, if anyone. The complaint alleges that the defendant agreed to furnish a good title to the property purchased for a certain consideration, to wit, $8,000, and the evidence clearly shows that the plaintiff dealt entirely with the appellant, and depended wholly upon him to do the things that would give him a good title to the property. Nixon, the cashier of the bank, who drew the memorandum of the agreement between the parties, testified: "The agreement was that Evans was to sell Leggett a certain piece of property for $8,000." The testimony of the owners of the property clearly shows that one of them was to receive $1,-500 for his equity, and the other $2,000 for his equity in the property; that they had no interest whatever in the matter as to how much the defendant realized out of the sale of the property. The defendant offered to procure a good title for $8,000; the plaintiff agreed to pay the $8,000 for a good title. In negotiating with the owners, the appellant ascertained that he must pay them $3,500 at least for their equity in the property. The record shows that by means of rebatement on insurance and rents due, the owners received in final settlement of the matter $3,531 instead of $3,500. There was a mortgage remaining on the property which was to be provided for out of the balance of the $8,000. The defendant paid over to the owners $3,531 out of the money theretofore deposited by the purchaser in the bank, and when the deed was executed to the plaintiff there was not sufficient left of the $8,000 to pay what was then due on the mortgage that then existed on the premises. But it is contended that by accepting this $3,531 the owners ratified as principals the contract for the sale of said property, and are therefore liable for whatever sum said mortgage exceeds the balance of said $8,000. There is nothing in this contention, for the reason that there was no ratification of the contract made between the defendant and the purchaser by the owners.

They simply said to the defendant, "Give us $3,531 and we will give you a deed." He paid them that sum and they executed the deed. A man by the name of Woods, who is shown by the record to be a silent partner of the defendant, testified on the trial that he told the owners he had sold the property for $7,500 plus their commission, and that he offered them then and there $100 of his own money to bind the bargain. Why did he do that if he was their agent? One of the owners testified that the appellant was not his agent to sell the property for $8,000 with all encumbrances paid. In regard to the transaction one of the owners testified: "I was paid by check. Maxwell handed me the check. I gave the deed. The deed is made directly to Leggett. I was to get $2,000 out of the deal. I don't know how much they were going to get from the property. I did not know that they were going to get $8,000."

It seems that the respondent left the matter almost wholly in the hands of the appellant. The respondent, after depositing $5,000 with Evans, left the state and left the matter to be adjusted by the appellant, and thereafter sent Evans $500 more money. Evans was left to complete the deal in accordance with the contract and he failed to do so, and is therefore liable. The owners were not advised of the contract made by the appellant with the purchaser. The appellant had no authority whatever from the owners to receive the $5,500 which he did receive. He therefore received said money as agent of the purchaser to be held by him until the contract was carried out, and in case there was a failure in the contract, he is personally bound to make a proper accounting to the purchaser therefor.

It is clear from the evidence that the appellant was trying to make what he could out of the deal; that the respondent was to receive a good title for $8,000; that the owners were to receive $3,500, and that after having paid $5,500 he was only obligated to pay $2,500 more for a good title; but under the adjustment made by the appellant there was left remaining against said property the balance due on said mortgage amounting to about $3,500. From the entire evidence it

appears that the appellant is liable to the respondent for the full amount of the judgment entered against him in this case.

There is substantial evidence to sustain the verdict. That being true, under the provisions of sec. 4824, Rev. Codes, the verdict will not be set aside on appeal. The judgment is affirmed, with costs in favor of respondent.

Stewart, J., concurs.

AILSHIE, J., Dissenting.—The uncontradicted evidence in this case shows that at the time the agreement to sell was made an escrow agreement was executed and placed in the First National Bank of Twin Falls, of which Nixon was cashier, and by the terms thereof either the bank or Nixon was appointed as the escrow holder, and consequently the agent of both parties for the purpose of delivery of the deed and the purchase price.

No contention is made that the holder of the escrow violated any of the terms of the escrow agreement, and still he paid over the money and received and recorded the deed, and at the time of the trial Nixon testified that the escrow memorandum had been destroyed. That the purchaser knew who the real owners of the land were is not questioned or disputed, nor is it denied that the real owners deeded the property and accepted payment under this contract of sale, and one of them was in the bank and assisted the land agent and cashier of the bank in figuring up the balance to be paid and delivered the deed to the bank. Under such an admitted state of facts it is unreasonable, in an action like this, to charge the mere agent, whose agency was disclosed and fully known and understood.

I dissent from the conclusion reached by the majority of the court.