[Civ. No. 1053.     Second Appellate District.—March 11, 1912.]

## D. J. CARPENTER, Respondent, v. C. P. GROGAN, Appellant.

SALE OF GROWING OLIVE CROP—LIMITED PURCHASE OF "FOUR TONS OF OIL OLIVES"—DESIGNATION BY PURCHASER OF RESIDUE AS "PICKLING OLIVES"—WARRANTY OF QUALITY NOT IMPLIED.—Under a contract for the sale of an olive crop growing upon the trees of the vendor, not sufficiently ripe for gathering, where a smaller price per ton was expressly limited to "four tons of oil olives," and the residue of the crop was designated by the purchaser as "pickling olives," at a higher price per ton, all olives to be carefully picked by the purchaser and paid for as agreed, after delivery, in the absence of an express warranty that the residue were "pickling olives," none is implied from such designation, and any loss of quality of part of the residue by frost and wind, before gathering, rendering part thereof unmerchantable, otherwise than as "oil olives," must fall upon the purchaser.

ID.—FINDINGS UPON CONFLICTING EVIDENCE NOT REVIEWABLE.—Where the questions of fact determined by the findings of the trial judge rest, in the main, upon evidence of a conflicting nature, the findings are not subject to review upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Chas. Monroe, Judge.

The facts are stated in the opinion of the court.

Powers & Holland, for Appellant.

Geo. P. Adams, and Curtis & McNabb, for Respondent.

JAMES, J.—Appeal from a judgment entered in favor of plaintiff, and from an order denying defendant's motion for a new trial. On the 19th of August, 1909, the following contract was entered into between plaintiff and defendant:

"This agreement made and entered into by and between D. J. Carpenter, and Chas. P. Grogan of Los Angeles, both parties of the state of California, is to the effect that Chas. P. Grogan agrees to purchase of said D. J. Carpenter his crop of olives now growing on the trees at Del Rosa at the following prices:

"One hundred & ten dollars per ton on cars at Del Rosa— less $55.00 per ton on four tons agreed on as Oil Olives. Olives to be picked in a careful manner for Ripe Pickling Olives. Payment to be made within 30 days from date of shipment.

"I hereby acknowledge receipt of $1.00 as first payment on the Olives.

"C. P. GROGAN.<br>
"D. J. CARPENTER."

At the time this contract was executed plaintiff was the owner of an olive orchard upon which the fruit which was made the subject of the contract was then growing. At that time the olives had about matured, but were not in the state of ripeness desired by the vendee. Shipment of the crop commenced in the latter part of October and continued from time to time until the 17th of February. Certain payments were made on account of the purchase price agreed to be paid by the vendee, but at the time shipment of the crop was concluded defendant contended that only a balance of $290.35 was due, while the plaintiff insisted that the amount was $1,666.17. This dispute arose on account of the fact that a portion of the olives before delivery to the transportation

company had become damaged by frost and other action of the elements. It was the contention of the defendant that his contract should be so construed as to require the plaintiff to accept for all olives delivered which were not suitable for pickling a price which would equal the reasonable value of such olives if purchased to be used for manufacturing oil. It was admitted that all of the olives delivered could be manufactured into oil, but that for pickling purposes a special standard of size, firmness and ripeness was required. Defendant in his answer alleged that as to the damaged olives, plaintiff had agreed subsequent to the making of the contract set out above that he should receive only the reasonable market price therefor. The trial court, however, found against the contention of the defendant as to the making of this subsequent agreement, and found, further, that all of the olives were picked in a careful manner, and that under the terms of the contract there was due a balance of $1,537.75 to the plaintiff, for which amount judgment was entered. In the findings of the court it was further recited that some of the olives had been damaged by frost or wind. It appeared by the testimony that the olives were all merchantable for the purpose of being manufactured into oil. The trial court determined that defendant was liable to plaintiff under the contract for all olives delivered at the rate of $110 per ton, except for four tons, for which it was recited in the contract payment was to be made at the rate of $55 per ton. All of the questions argued depend for their solution upon what construction should be given to the contract. If the defendant may be said to have reserved for his benefit a condition to be implied from the written contract of sale that the olives to be delivered, except the four tons agreed upon as oil olives, should be suitable for pickling purposes, otherwise that they should not be paid for at the rate of $110 per ton, then the various objections made would appear to be of substantial merit. However, we agree wholly with the trial court in its construction of the contract of sale. The crop of olives was then growing upon the trees and was about matured when the defendant made his contract of purchase; that contract contains no terms from which there can be construed any warranty of quality as to the fruit contracted for; on the contrary, it was expressly recited that it had been agreed that four tons only of the olives were to be paid for at $55 per ton as "oil

olives.'' The crop was purchased as a crop then in existence and not one to be grown in the future; that crop was not destroyed, but was delivered to the defendant by the plaintiff. If the defendant expected to insist upon a certain standard of size, ripeness, or other quality, to be possessed by the fruit at the time it was delivered, then that matter should have been expressed in the written agreement of sale; otherwise the vendor could not be bound by it. This court recently had occasion to construe a similar contract in the case of *Kenney* v. *Grogan*, 17 Cal. App. 527, [120 Pac. 433], and questions almost identical with those presented here were there fully considered and determined adversely to this defendant's present contentions. The decision rendered in that case and the authorities therein cited are applicable here. The questions of fact determined by the findings of the trial judge rest in the main upon evidence of a conflicting nature, and therefore those findings are not subject to review.

Upon the whole case as presented on the record submitted to us, in our opinion, there is no error shown.

The judgment and order are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 8, 1912.