[Civ. No. 4089. Third Appellate District.—November 8, 1930.]

GENARO A. STELLA et al., Respondents, v. E. C. SMITH, Appellant.

Harris, Willey, Griffiths & Harris, for Appellant.

Erling S. Norby for Respondents.

MR. JUSTICE Pro Tem. SHIELDS Delivered the Opinion of the Court.—On August 20, 1927, the plaintiff, doing business under the name of Nuestro Fruit Company, entered into a contract with the defendant Smith for the purchase of grapes. Their agreement was sought to be expressed by a brief writing, which provided that E. C. Smith, the defendant, agreed ''to sell to the Nuestro Fruit Company, of Yuba City, Calif., all the tons of Zinfandel grapes, 1927 crop, at a price of $42.50 per ton; to deliver grapes at Alamendra Station on the Sacramento Northern Railway at his own cost; purchaser to furnish boxes in proper season; all grapes must pass Government sugar test for shipping, second crops Zinfandels included''. Plaintiffs paid to the defendant $2,000, as an advance on the purchase price of the grapes. One carload of the grapes was delivered, and accepted and paid for by plaintiffs. Immediately thereafter a large quantity of grapes, about 1,000 lug boxes, were tendered by defendant in further performance of his contract. Plaintiffs refused to receive them, claiming that they were unfit for shipment, and that they did not satisfy the terms of the contract between the parties. Much correspondence followed between the parties which need not be particularly referred to herein. Defendant sold the grapes to other parties, and plaintiffs began this action to recover the $2,000 previously paid to the defendant, this sum having been

intended to be applied to the payment for the grapes which plaintiffs refused to receive. By a previous telegram and letter the plaintiffs had notified defendant that because of what they called his breach of the contract they regarded the contract at an end and they demanded of defendant the return of this $2,000 prepayment.

If plaintiffs were correct in their contention that defendant had breached his contract they were entitled to this remedy. "An action for money had and received, to recover money paid under a valid contract" can be maintained where it can be shown "that the defendant has been guilty of a breach thereof". (17 Cal. Jur. 614.)

Plaintiffs' complaint was in three counts, the first of which, while informal, was substantially for money had and received. The remaining two counts were based upon the contract, and recognized its existence. At the trial, however, plaintiffs abandoned their second and third causes of action and elected to proceed upon the cause of action first stated. At the trial plaintiffs proposed to show that the grapes as tendered did not comply with the requirements of the contract in that they were soft, mouldy and that mixed with them in the boxes were leaves, stems, green grapes and litter, and that, as a consequence, they were unfit for shipment. To such evidence the defendant made much general objection.

The case seems to have been tried with some confusion as to the issues. Plaintiff in his complaint, after setting forth the contract, and the payment of the $2,000 above mentioned, simply states, in reference to the grapes agreed to be delivered, that "defendant refused and failed to deliver said grapes according to the terms of said agreement", and asked that he be required to repay the $2,000. It will be seen that plaintiffs did not indicate in what particular defendant so failed. So far as the pleading was concerned, the court was left in doubt as to whether the crop of grapes as they matured were not merchantable, or whether they were so improperly picked and packed that they were not fit for shipment, or whether he relied upon the theory that the grapes as packed and offered for delivery, failed to comply with the requirements of the "California Fruit, Nut, and Vegetable Standardization Act of 1927". [Stats. 1927, p. 1845.] But by elimination the theory upon which it

could properly have been tried is easily determined. It could not have been maintained upon the theory first above mentioned. The contract herein was not a sale; it was a contract to sell. The subject of the sale was in existence at the time the sale was made and as a consequence the warranties of soundness and menchantability provided by section 1768 of the Civil Code were not implied. So if the crop of grapes, as grown, had been properly picked and tendered to plaintiffs in the condition in which it had matured they would have been bound to have accepted them. (*Kenney* v. *Grogan,* 17 Cal. App. 527 [120 Pac. 433]; *Carpenter* v. *Grogan,* 18 Cal. App. 505 [123 Pac. 538].) The complaint makes no objection to the crop, which was the subject of the contract as the same was grown and matured upon the vines. It is likewise true that if the grapes were so picked and packed as to violate the requirements of the Standardization Act above referred to, they might properly have been rejected. (*McRae* v. *Heath,* 60 Cal. App. 64 [212 Pac. 228].) But it would seem that if this were the ground upon which plaintiffs refused to accept the grapes they should have so pleaded in their complaint, and the court should have found the facts of such violation. Neither of these things were done, and thus the third theory suggested above may be disregarded. This leaves the second theory announced above; that the grapes were so picked and packed as to violate the contract and to justify the plaintiffs in rejecting them. We will inquire as to whether or not this question was involved and was put in issue.

Under the contract here defendant was to pick the grapes and to deliver them for shipment to the plaintiffs. This obligated defendant to pick the grapes with reasonable care and skill and to take ordinary care to avoid injuring or destroying them. If they were not so picked, or picked in such a manner that when tendered to plaintiffs they were unfit for shipment, plaintiffs could properly have rejected them, and could then have maintained this action. The complaint herein does not in terms declare upon this alleged breach of the contract. But it is broad enough to include it, and the action was tried upon the theory that the fitness for shipment of the grapes was the question in issue. This appears very clearly from the entire record, but specifically from a statement by defendant in his closing

brief, where he says: "It is not and never has been our position that the sole duty resting on us in order to comply with the terms of the contract was to furnish grapes of the specified sugar content. We have always recognized that there are certain provisions as to quality which the law implies. One of these is that the grapes must be fit for shipment." So the question of soundness and merchantability of the fruit *as picked* and tendered became substantially the only issue in the case and this question was very thoroughly tried. The trial court found that the grapes "were unfit for shipping, in that said grapes when so tendered were mouldy, and were mixed with leaves and stems, green grapes and other refuse". It will be noted that it is not found *in terms* that the picking and packing of the grapes was so improperly or negligently done as to violate the contract. But from the facts found it conclusively appears that it was in the character of the picking and packing of the grapes that the breach occurred, and not in the character of the crop, as in the cases of *Kennedy* v. *Grogan* and *Carpenter* v. *Grogan, supra.* If this finding, therefore, is supported by substantial evidence it must be accepted, no matter how convincing the evidence to the contrary may have been. In support of the finding the record discloses the testimony of a number of witnesses called on behalf of the plaintiffs. Genaro Stella, one of the plaintiffs, testified that when defendant's employees started to pick the second carload of grapes (the ones which were rejected) "they were picking everything that was on the vines, green, and water bearing and mouldy and everything that was on the vines". He was asked to "estimate" what per cent of mildew grapes were in the boxes. He replied, "Every box there was five or six or seven pounds of mildew grapes or mouldy grapes." Asked as to the condition of the other grapes, he replied: "The water bearing were all cracked and running out, they were really wet." Objection is now made that the "estimate" of the witness is no more than a guess and does not constitute evidence. No objection was made to the question at the time it was asked, nor was any objection made to the competency of the witness, nor to the lack of foundation laid. The answer might well be considered the statement of a fact. But if an opinion, the witness being presumptively competent after twenty years

in packing and shipping grapes to express one, his opinion was entitled to such weight as the court saw fit to give it. Another witness testified that he examined fifty or more of the boxes of grapes and that every one of them had mouldy grapes in them. Another stated that he examined eight or ten of the boxes and that he "found a lot of soft grapes among them, mostly in the bottom, and some mould in them". The witness Strange testified that he examined forty or fifty boxes, "and there were many soft grapes in them, and some mouldy ones". He further testified that he found this condition scattered through the boxes, and that each box contained some soft grapes and some mouldy ones. Helen Stella, another of the plaintiffs, testified that she observed the condition of the grapes tendered for acceptance. She said that there were quite a number of mouldy and cracked berries in each box that she looked at. Asked to estimate the probable percentage of mould that was in each box, she answered again without objection, "anywhere from five to six per cent, and some as high as seven per cent of bad grapes". The grapes were purchased for shipping. The contract itself shows this; they were to pass "the Government sugar test for shipping". They were to be delivered in boxes at a railway station. It was testified that defendant had been told that the grapes were to have been shipped "back East".

They clearly should have been picked with a view to this condition. Packed as they were, the plaintiff Stella testified: "If you put water-bearing grapes in the box, it cracks and heats up, and all the box gets in one mash, and mush up."

Clearly, if this evidence were believed, over conflicting and contrary evidence, it was sufficient upon which to found the finding announced by the court. At the trial defendant introduced a number of certificates issued by state and federal authority under the provisions of the "California Fruit and Vegetable Certification Act". (Stats. 1927, p. 946.) These certificates set forth that the grapes were fit for shipment under the conditions prescribed by the Standardization Act above mentioned. But this, as we have seen, was not the issue here. The issue was whether or not the grapes had been picked and packed in a reasonably careful manner and in such a way as to be fit for shipment, as required by the contract.

Undoubtedly these certificates were competent evidence upon this question. But they were not conclusive. By the very terms of the statute under which they were issued they are made only *prima facie* evidence of the facts certified. Unquestionably they make a most impressive showing. But the rule that where there is a conflict in the evidence, and where there is substantial evidence to support it, the finding of the trial court will not be disturbed, is too old and too well settled for us to disregard it.

The judgment is, accordingly, affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 8, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 5, 1931.