(April 30, 1908.)

## O. B. ROSS, Appellant, v. GOLD RIDGE MINING CO., a Corporation, Respondent.

[95 Pac. 821.]

Attachment—Motion to Dissolve—Affidavit—Undertaking—Contract for Direct Payment of Money.

1. The statute provides in what actions an attachment may issue, and if the complaint discloses that the action is not such, and an attachment is issued, then it was improperly issued, and upon proper motion will be dissolved.

2. A motion to dissolve, however, will not be turned into a demurrer.  If the complaint fails to state a cause of action, because the facts plead are defectively stated, and it appears from the complaint that a cause of action can be stated by amendment under the ordinary rules governing amendments, then on the hearing of the motion to dissolve, the amendment will be considered as having been made.

3. If, however, the complaint states no cause of action, then a motion to dissolve the attachment, on the ground that the complaint fails to state facts sufficient to constitute a cause of action, will be considered and sustained.

4. An affidavit for attachment should set forth the statutory requirements, either in the language of the statute or in language of substantially the same purport or meaning.

5. Where the statute provides for filing an affidavit for a writ of attachment, and specifies what the affidavit shall contain, it is not necessary to allege any other facts than those specified in the statute.

6. It is not necessary, in an affidavit for an attachment, to allege, in unequivocal language, that the debt is due.  It is sufficient to allege that the defendant is indebted to the plaintiff in the sum of ——— dollars, over and above all legal setoffs or counterclaims.

7. An affidavit for attachment, which alleges that the defendant is indebted to the plaintiff in the sum of $1,750, over and above all legal setoffs and counterclaims, upon an express contract for the direct payment of money, is sufficient to show that the debt is due and that it is founded upon an express contract for the direct payment of money.

8. A contract which provides, "And we further agree that after the first day of September, 1906, to place the said 25,000 shares of Gold Ridge Mining Stock for O. B. Ross at five cents a share, clear to him, and if he so desires, the said 25,000 shares of stock will be placed before any other Gold Ridge Mining Stock is sold," is a contract for the direct payment of money and authorizes an attachment, in an action brought thereon for failure to place or sell said stock, according to the terms of said agreement.

9. The words "direct payment," as used in Rev. Stat., sec. 4303, mean absolute, unconditional, free from intervening agencies or conditions.

10. An undertaking for attachment which contains all the provisions and conditions required by the statute, is sufficient, and the mere fact that it does not provide a penalty equal to the claim sued for does not render such undertaking void.

11. The statute providing for an undertaking for attachment, fixing the minimum penalty at $200 and the maximum the amount of the claim sued for, vests a discretion in the clerk as to the amount of the bond to be required, but a failure of the clerk to require an undertaking, when the amount sued for is in excess of $200, equal to the amount sued for, is not a ground for dissolving the attachment.

(Syllabus by the court.)

APPEAL from an order of the District Court of First Judicial District for the County of Kootenai dissolving an attachment. Hon. W. W. Woods, Judge. *Reversed.*

R. E. McFarland, for Appellant.

The complaint does state facts sufficient to constitute a cause of action, and, if it did not, it could be amended. A motion to discharge an attachment does not reach defects in the complaint. (*Kohler v. Agassiz,* 99 Cal. 9, 33 Pac. 741.)

Contracts of the nature of the one in the case at bar are contracts for the direct payment of money, and writs of attachment will issue thereon. (*Dunn v. Mackey,* 80 Cal.

104, 22 Pac. 64; *Santa Clara Valley Peat Fuel Co. v. Tuck*, 53 Cal. 304; *Kohler v. Agassiz*, 90 Cal. 9, 33 Pac. 741; *Donnelly v. Strueven*, 63 Cal. 182; *Flagg v. Dare*, 107 Cal. 482, 40 Pac. 804; *DeLeonis v. Etchepare*, 120 Cal. 407, 52 Pac. 718; *Coates v. Arthur*, 5 S. D. 274, 58 N. W. 675.)

McClear & Burgan, for Respondent.

An affidavit for an attachment must contain an allegation in unequivocal language that the debt sued on is due before the writ of attachment should issue. (*Gatward v. Wheeler*, 10 Ida. 66, 77 Pac. 23; *Kerns v. McAulay*, 8 Ida. 558, 69 Pac. 539.)

"Where the contract does not furnish the measure of the liability of the defendant, and the damages are unliquidated, an attachment cannot be had." (*Dunn v. Mackey*, 80 Cal. 104, 22 Pac. 64; *DeLeonis v. Etchepare*, 120 Cal. 407, 52 Pac. 718.)

STEWART, J.—This is an appeal from an order dissolving an attachment. It is alleged in the complaint that the appellant and respondent entered into an agreement, whereby and under the terms of which the respondent agreed that if plaintiff would take 25,000 shares of the treasury stock of the respondent corporation, and pay therefor two cents a share, the respondent would at any time after the first day of September, 1906, place said 25,000 shares of stock for plaintiff at five cents a share, clear to him; that thereupon plaintiff paid to said defendant the sum of $500 for said 25,000 shares of treasury stock, and defendant executed and delivered to the plaintiff the following written agreement, to wit:

"Coeur d'Alene, Idaho, July 17, 1906.

"We, the undersigned, do this day and date, sell, transfer and deliver to O. B. Ross twenty-five thousand (25,000) shares of the Gold Ridge Mining Company treasury stock at two cents a share cash in hand paid.

"And we further agree that after the first day of September, 1906, to place the said 25,000 shares of Gold Ridge

Mining Stock for O. B. Ross at five cents a share clear to him and if he so desires the said 25,000 shares of stock will be placed before any other Gold Ridge stock is sold.

"GOLD RIDGE MINING COMPANY,
"By D. DAVIS, General Manager."

At the time of filing the complaint, the plaintiff filed an affidavit and undertaking for a writ of attachment. The affidavit set forth in substance the same facts alleged in the complaint and contained a copy of the agreement sued upon and set forth in the complaint. Thereafter the respondent moved the court for an order dissolving the attachment upon the following grounds:

"1. That the complaint in said action does not state facts sufficient to constitute a cause of action against said defendant. 2. That the affidavit for attachment filed in said action was and is defective and insufficient in this, that it does not state that the indebtedness mentioned in said affidavit was due at the time of the execution or filing of said affidavit or at the beginning of said action or due at all. 3. That the undertaking on attachment filed in said action is insufficient and not such an undertaking as is required by the laws of the state of Idaho. 4. That the contract declared upon in the complaint and stated in the affidavit of attachment is not a contract for the direct payment of money."

The court sustained the motion. The appeal presents three questions for review: (1) Does the complaint state facts sufficient to constitute a cause of action against defendant? (2) Was the affidavit sufficient to authorize the issuance of the writ? (3) Was the undertaking in conformity to law?

Rev. Stat., sec. 4302, provides that "The plaintiff at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached . . . . in the following cases: 1. In an action upon a judgment or upon contract, express or implied, for the direct payment of money." The statute thus provides that an attachment may issue in an action upon a judgment or upon a contract, express or implied, for the direct payment of money. If the complaint discloses that it is not such an action and an at-

tachment is issued, then it was improperly issued, and upon proper motion will be dissolved.

A motion to dissolve, however, cannot be turned into a demurrer. If the complaint fails to state a cause of action because the facts are defectively stated, and it appears from the complaint that a cause of action can be stated by amendment, under the ordinary rules governing amendments, then on the hearing of the motion to dissolve, the amendment will be considered as having been made. (*Kohler v. Agassiz,* 99 Cal. 9, 33 Pac. 741; *Hathaway v. Davis,* 33 Cal. 161; *Hammond v. Starr,* 79 Cal. 556, 21 Pac. 971; *Hale Bros. v. Milliken,* 142 Cal. 134, 75 Pac. 653.)

If, however, the complaint states no cause of action, then the motion to dissolve on the ground that the complaint fails to state facts sufficient to constitute a cause of action may be considered and sustained. In this case, the action seems to be based upon a written contract, and if the facts alleged are not sufficient to state a cause of action, it is apparent from the complaint itself that it can be amended by proper allegations so as to state facts sufficient to constitute a cause of action.

The second and fourth grounds of the motion go to the sufficiency of the affidavit for the attachment, and will be considered together. The respondent contends that the instrument sued upon shows upon its face that the indebtedness, if any, is not due; and second, that the said instrument is not a contract for the direct payment of money. Under the first ground, counsel contend that it is necessary to allege in the affidavit, in unequivocal language, that the debt is due, and cites in support of this contention *Kerns v. McAulay,* 8 Ida. 558, 69 Pac. 539, and *Gatward v. Wheeler,* 10 Ida. 66, 77 Pac. 23. In the former case the court had under consideration the sufficiency of an affidavit for attachment, in which case the affidavit stated "That defendants are indebted to plaintiff in the sum of $43,995.72, with interest, less the sum of $19,950.56." In considering the sufficiency of this allegation, the court in that case said: "That is not equivalent to, and does not mean that the indebtedness is the former

amount less the latter, over and above all legal setoffs or counterclaims." The court, further discussing the sufficiency of the affidavit in that case, holds that the affidavit for a writ of attachment must set forth all of the statutory requirements, either in the language of the statutes or in language of substantially the same purport or meaning, and then follows this statement: "Said statute in terms does not require the affidavit to state that the indebtedness is due, but by necessary implication it clearly requires it." In *Gatward v. Wheeler* this court quotes the above from *Kerns v. McAulay, supra,* and then says: "And we think the affidavit should state in unequivocal language that the debt is due before the writ should issue. It certainly cannot be said that under the terms of the statute a writ of attachment can legally issue until the debt is due, and, this being true, it was evidently the intention of the legislature that such fact should be shown by the affidavit."

The statute, however, specifies just what the affidavit for attachment must contain, and if the affidavit sets forth the statutory requirements, it is sufficient. Rev. Stat., sec. 4303, provides that the clerk must issue the writ of attachment upon receiving an affidavit by or on behalf of the plaintiff, setting forth, first, that the defendant is indebted to the plaintiff, specifying the amount of such indebtedness, and whether upon a contract for the direct payment of money.

In this case the affidavit for attachment recites as follows: "That said defendant, Gold Ridge Mining Company, a corporation, is indebted to plaintiff in the sum of Seventeen Hundred Fifty Dollars ($1750.00), over and above all legal setoffs and counter-claims upon an express contract for the direct payment of money, to wit, on an agreement made and entered into by and between plaintiff and defendant on the 17th day of July, 1906, at Kootenai County, State of Idaho, whereby defendant agreed that if plaintiff would purchase twenty-five thousand shares of treasury stock in Gold Ridge Mining Company, at two cents a share, it would, after the first day of September, 1906, place said twenty-five thousand shares of treasury stock for said plaintiff at five cents

a share clear to him, and that plaintiff paid the sum of Five Hundred Dollars ($500.00) to defendant and received said shares, and to evidence said agreement the said defendant executed and delivered to plaintiff a written agreement in words and figures following, to wit.'' Then follows the agreement set forth above.

It will be seen from this language that the affidavit specifically and clearly sets forth that the defendant is indebted to plaintiff in the sum of $1750.00, over and above all legal setoffs and counterclaims upon an express contract for the direct payment of money. This is sufficient and meets every requirement of the statute. It alleges that the defendant was indebted to the plaintiff at the time the affidavit was made, and that such indebtedness is upon an express contract for the direct payment of money.

The statute does not require, either by express terms or by implication, that the affidavit shall contain an allegation that the ''debt is due.'' Where the statute provides for filing an affidavit for a writ of attachment, and specifies what the affidavit shall contain, it is not necessary to allege any other facts than those specified in the statute. In other words, it is not necessary to allege the facts required to be stated in the complaint in order to maintain an action, in the affidavit, unless the statute requires such facts to be stated. The fact that the complaint does not show the debt is due may be a ground for demurrer; but the fact that such allegation is not contained in the affidavit is not a ground for dissolving the attachment issued in said action.

We think the language used by this court in *Kerns v. Mc-Aulay, supra,* states the rule correctly, as follows: ''The affidavit for a writ of attachment must set forth all of the statutory requirements, either in the language of the statute or in language of substantially the same purport or meaning,'' and any language used in that opinion to the contrary, as well as in the case of *Gatward v. Wheeler,* is disapproved and overruled.

Is the agreement a contract for the direct payment of money? An examination of this instrument discloses that

the defendant agreed that after September 1, 1906, it would place the stock sold to the plaintiff at five cents a share, clear to him. The parties evidently intended by this contract that after September 1, 1906, the defendant would resell for plaintiff the stock sold to him at five cents a share, clear; that is, the plaintiff having purchased the stock at two cents a share, the defendant would resell the same for seven cents a share. The words, "to place said 25,000 shares," evidently was intended by the parties to mean "to resell." If this be a correct construction of this contract, then the defendant does agree to resell said stock for plaintiff after September 1, 1906, and there arises out of said contract an implied obligation that the defendant will pay to the plaintiff the amount received therefor. Under this contract, the measure of damages is fixed, the defendant agreeing to sell said stock for five cents a share clear. If the defendant fails to perform its part of said contract, that is, fails to sell said stock at the price fixed by the contract, then the contract itself fixes the damages at five cents a share clear.

The case of *Dunn v. Mackey*, 80 Cal. 104, 22 Pac. 64, is very much like the case under consideration. In that case the defendant agreed in writing to sell certain land belonging to the plaintiff within a specified time and to realize therefor the sum of $12,500. He failed to sell and plaintiff sued for damages. In the agreement in that case there was a provision that the defendant would account for the proceeds of the sale of said premises. This provision is not contained in the contract in this case; but it must be conceded that the contract to pay over is implied, and arises out of the contract to sell. If the respondent is obligated to sell, he is obligated to account for and pay over to the appellant the amount realized from such sale. So we think that the principle of law involved in this case is the same as that involved in the case of *Dunn v. Mackey, supra*. In that case, the court quotes with approval from *Hathaway v. Davis*, 33 Cal. 161, as follows:

"There is, certainly, no reason why an attachment should be allowed in an action upon a promissory note which is

not equally persuasive in the present case. The plaintiff can swear to the amount due with equal accuracy, and his right to recover is as clear, and his claim upon the law for the advantages of this remedy no less reasonable and just. True, the contract does not specify the precise amount to be paid, but it points directly to the instrument or record which does, which is all that is required. To read 'direct' as the opposite to 'collateral' would be to create a distinction of very doubtful foundation, and certainly opposed to the general policy of the act. To so read it would be to exempt all collateral contracts from the operation of the act. Indorsers, guarantors, sureties and all others who undertake to pay or become responsible for the debts of another, could not be reached by attachment; and yet, there can be no good reason why they should be excepted. We are of the opinion that the legislature intended no such distinction.''

The court, further in the opinion, says: ''There can be no doubt that the defendant bound himself to realize and pay to the plaintiff, within one year, a certain and fixed sum of money. The fact that he was, if possible, to realize the money by a sale of property to some one else does not affect the question, as he bound himself unqualifiedly to account for and pay over that sum of money at the end of the year, or before, if he made a sale of the property.''

So in the case at bar, the respondent obligates itself to sell for the appellant 25,000 shares of stock after the first day of September, 1906, at five cents a share clear to him, and thereby obligated itself to pay to the appellant the amount realized therefor. This case comes clearly within the principle laid down in the case of *Dunn v. Mackey, supra.*

In the case of *Hale Bros. v. Milliken,* 142 Cal. 134, 75 Pac. 653, the court quotes from Wade on Attachments, sec. 23, and says:

''The author shows that there is no necessary objection that the damages are unliquidated; that the meaning intended to be conveyed by these terms is merely that the amount plaintiff is entitled to recover shall be ascertained or ascertainable by reference to the contract, and proof of

what was done under it; that the standard by which de-fendant's liability is to be measured shall be furnished by the contract, and not left open to mere speculation or vague conjecture."

The contract set forth in the affidavit clearly shows that the respondent agreed to sell and pay over to the plaintiff an amount equal to five cents a share on the stock sold. While the contract does not say, in so many words, that respondent will pay appellant seven cents a share for the 25,000 shares of stock, yet it does say that respondent will sell said 25,000 shares of stock for five cents clear (or seven cents), and a failure to sell as agreed works a breach of said contract, and the damages are fixed by the contract at five cents per share. It is a contract for the direct payment of money. There are no intervening agencies or conditions. It is absolute and unconditional. The words "direct payment," as applied to payments, and as used in the statute, clearly mean absolute, unconditional, free from intervening agencies or conditions. The time is certain, the amount is certain, and the persons are certain, absolute, unconditional and fixed by the contract itself. The time is fixed as after September 1, 1906; the amount is five cents a share; the persons are respondent and the appellant. It might be argued, however, that the time is not absolute or certain by reason of the fact that it is not fixed definitely as to the particular time after September 1st. In all such contracts where the time is not specifically fixed, a reasonable time is allowed for performance, and in this case, no doubt the defendant would have a reasonable time after September 1st to make such sale, and the reasonableness of such time would depend upon the circumstances; but the time by the contract is fixed. It must terminate and happen within a reasonable time after September 1, 1906.

In the case of *Armstrong v. Slick, ante,* p. 208, 93 Pac. 775, this court held that the contract of an indorser of a promissory note or a guarantor of a bill of exchange is a contract for the direct payment of money, and that an attachment might issue against the property of such indorser or guarantor.

So, in this case, the facts alleged in the affidavit show the contract to be for the direct payment of money, and it was sufficient to authorize the issuing of an attachment. (*Kohler v. Agassiz,* 99 Cal. 9, 33 Pac. 741; *De Leonis v. Etchepare,* 120 Cal. 407, 52 Pac. 718; *Flagg v. Dare,* 107 Cal. 482, 40 Pac. 804.)

The appellant contends that in the argument of the case below, the respondent argued that the undertaking on attachment was insufficient, for the reason that the sum specified therein as a penalty was insufficient under the case of *Willman v. Friedman,* 3 Ida. 734, 35 Pac. 37. While the court in that case had under consideration the sufficiency of an undertaking, the court, however, did not decide that to authorize the issuing of a writ of attachment a bond in excess of $200 should be required. The opinion of the court was merely a recommendation to the clerk upon issuing a writ as to exacting a bond; that is, that the statute "invests the clerk with a discretion in fixing the amount of the undertaking, to a minimum of $200, and a maximum the amount of the claim sued for"; but the court did not hold or intimate that because the clerk did not require a bond in excess of $200 or equal to the claim sued for, the attachment was not authorized or improperly issued or should be discharged. In other words, as long as the undertaking provides the conditions required by the statute, the mere fact that it does not provide a penalty equal to the claim sued for is not a ground for discharging the attachment. Had the legislature intended that to authorize an attachment a bond should be given for a specific sum, it would have so provided.

The order dissolving the attachment is reversed. Costs awarded to appellant.

Ailshie, C. J., and Sullivan, J., concur.