195 P.2d 339

**B. J. CARNEY & CO. v. MURPHY.**

**No. 7425.**

Supreme Court of Idaho.

June 23, 1948.

Estes & Felton, of Moscow, for appellant.

Jack McQuade and J. H. Felton, both of Moscow, for respondent.

HYATT, Justice.

Plaintiff corporation sued defendant for $25,199.41, alleging in substance that early in the year 1941 defendant, a pole maker, agreed to make and sell, and plaintiff agreed to purchase, at going prices, cedar poles and other wood products; that plaintiff agreed to assist defendant financially in the purchase of stumpage and timber lands, and to furnish supplies, and also advance reasonable sums to aid him in meeting his payrolls in the course of making and supplying such poles and wood products; that it was further agreed that credit would be given the defendant upon the books of the plaintiff for poles and wood products supplied it by defendant; that from the year 1941 to November 20, 1947, there was maintained between the parties a mutual, open and current account, with each party furnishing goods, materials and cash to and for the benefit of the other; that ever since the fall of 1945 defendant has failed and refused to deliver to plaintiff any poles or wood products whatsoever; that the last item on the account was entered November 20, 1947, by allowance of a credit which defendant

claimed; that there remains due and owing to plaintiff a balance under said account of $25,199.41, which is unpaid, and which the defendant refuses to pay.

The complaint was filed December 2, 1947, and on December 3, 1947, the affidavit and undertaking for attachment being also filed, a writ of attachment issued, by which the Sheriff attached certain real and personal property of the defendant. On December 17, 1947, defendant served and filed a written notice of motion to discharge said writ on the ground that the same was improperly and irregularly issued, in that (so far as material to this appeal) the action is not upon contract, express or implied, for the direct payment of money, but is one for damages for breach of contract; and the affidavit for attachment is insufficient.

The transcript on appeal contains no written motion nor any showing of an oral motion to discharge the writ, but the order discharging the attachment recites among other things that: "Defendant's motion to discharge attachment coming on regularly to be heard this 22nd day of December, 1947, pursuant to notice had and given * * * the plaintiff appearing by its attorneys of record * * * and the defendant appearing by his attorneys * * * and the matter having been argued to the court * * *".

Appellant assigns as error the discharge of the attachment for the reasons:

(a) No motion to discharge attachment was ever made;

(b) The writ was properly issued in compliance with the law.

■ Appellant's first assignment is without merit. The order discharging the attachment recites that the motion came on to be heard. The record discloses no objection by appellant to the lack of any motion, written or oral. The situation is practically identical with that in Leggett v. Evans, 16 Idaho 760, 102 P. 486, 487, where, in support of a motion to dismiss an appeal, it was urged that no motion for a new trial was ever filed. The court said: "The transcript in the case at bar as certified shows that a motion for a new trial was made and passed upon by the trial court or judge. That being a court of general jurisdiction, the presumption is that its acts were all regular, and that it would not pass upon a motion for a new trial unless such motion were made. No objection was raised in the court below that a motion for a new trial had not been properly made, and the judge recites in his order as follows: 'The motion of the defendant in the above-entitled action asking that the verdict of the said cause be set aside and vacated and a new trial granted, the said action coming on to be heard this 9th day of Nov., 1908,' etc., and that 'It is hereby ordered that the said motion be and the same hereby is overruled.' The record, therefore, on its face shows that a motion for a new trial was made. As bearing upon this question, see

State v. Wright, 12 Idaho 212, 85 P. 493; Stoddard v. Fox [15] (Idaho) [704], 99 P. 122. The presumptions are all in favor of the regularity of the proceedings of courts of general jurisdiction." .

See also Curtis v. Walling, 2 Idaho 416, 18 P. 54, wherein the voluntary appearance by attorney and his participation in the argument of a motion was held to be a waiver of notice of the motion. In the case at bar, appellant's attorneys appeared in court and argued and resisted the matter of the discharge of the attachment. Therefore, appellant was not misled, nor were its substantial rights affected. As was said in Nobach v. Scott, 20 Idaho 558, 563, 119 P. 295, 296: " * * * Parties will not be permitted to stand by and not raise seasonable objections to mere defects in papers and proceedings in a court, and thus permit the court to act as though there were no defects in the proceedings, and thereafter take advantage of such defects on appeal."

█ Turning to the question of whether the writ of attachment was properly or improperly issued, we need only to consider the affidavit for attachment and the complaint, since it is undisputed that defendant is an Idaho resident and his property was attached under the writ. The affidavit for attachment is sufficient. It sets forth the particular allegations required by Sec. 6-502, I.C.A. Ross v. Gold Ridge Mining Co., 14 Idaho 687, 95 P. 821; Knutsen v. Phillips, 16 Idaho 267, 101 P. 596.

Sec. 6-501, I.C.A. provides in part:

"The plaintiff * * * may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, * * * in the following cases:

"1. In an action * * * upon contract, express or implied, for the direct payment of money * * * "

█ The nature of the action is to be determined upon the complaint alone. Heffron v. Thomas, 61 Mont 10, 201 P. 572. The inquiry into its sufficiency to sustain the attachment may not go further than to ascertain whether the action is upon a contract, express or implied, for the direct payment of money; whether it states facts sufficient to constitute a cause of action against the defendants; and, if it does not, whether it can be amended so as to state a cause of action. Union Bank & Trust Co. v. Himmelbauer, 56 Mont 82, 181 P. 332 at page 335. Substantially to the same effect is Ross v. Gold Ridge Mining Co., 14 Idaho 687, 690, 95 P. 821, 822.

In the latter case, it was said: "The statute thus provides that an attachment may issue in an action upon a judgment or upon a contract, express or implied, for the direct payment of money. If the complaint discloses that it is not such an action, and an attachment is issued, then it was improperly issued, and upon proper motion will be dissolved."

■ Conversely, if the complaint by any reasonable intendment discloses an action upon contract, express or implied, for the direct payment of money, the writ of attachment was properly issued.

■ Appellant claims the action is one for a balance due on an open, mutual and current account, which theory, if correct, we concede, permits an attachment, there being an implied contract to pay the indebtedness.

Respondent contends that, under the allegations of the complaint, this action can only be one for damages for breach of contract. However, the complaint is not drawn for damages for breach. There is no allegation of damages for defendant's failure to deliver the poles. Morrison v. Am. Dev. & M. Co. 5 Idaho 77, 47 P. 94. See also Smith v. Johnson, 2 Wash.2d 351, 98 P.2d 312, where a similar contention was made and rejected. Nor does the contract call for the delivery of any specific lot or definite quantity of poles and wood products. No time was fixed for the duration thereof.

■ Plaintiff's claim is either for a balance due for advances which constituted loans, to be repaid in commodities, or for the return of moneys advanced upon the purchase price of the same. The action is one for money loaned or for money had and received, either of which constitutes a contract implied by law for the direct payment of money, for which an attachment will lie. If the advances were loans, it is still unnecessary in view of the conclusions hereinafter reached, for us to decide whether the provisions for such advances are independent and severable parts of the contract.

■ Considering the advances as loans, it has been held under a contract for the purchase of bark providing for an advance payment by the purchaser to the seller to be returned or repaid by allowing a credit of $1.00 per ton on each ton delivered until the advance was repaid, that the word "advance" should be construed and treated as a loan. William F. Mosser Co. v. Cherry River B. & L. Co., 290 Pa. 67, 138 A. 85. See also Brock v. F. & D. Co. of Md., 10 Cal.2d 512, 75 P.2d 605, that the word "advance", as ordinarily used, implies a loan.

■ Where loans are made or funds are furnished at the special instance and request of an individual, and for and on his behalf, the law presumes or implies, unless there is a contract to the contrary, that the same are to be repaid. Pinnacle Packing Co. v. Herbert, 157 Or. 96, 70 P.2d 31 at 34, 111 A.L.R. 1055; Brown v. Spencer, 163 Cal. 589, 126 P. 493; Couts v. Winston, 153 Cal. 686, 96 P. 357.

■ Assuming the advances here were loans to be repaid in commodities delivered at going prices, plaintiff was entitled to claim the balance due it in money when the defendant refused to deliver any more

poles. Where a party from whom payment is due in goods, fails to pay in the particular way specified in the contract, payment in money may be demanded. 13 C.J. 587; 17 C.J.S., Contracts, § 366, page 824; Marshall v. Ferguson, 23 Cal. 65; Wroughton v. Waffle, 122 Iowa 486, 98 N.W. 307; Hannan v. Anderson, 15 Colo.App. 433, 62 P. 961. The underlying theory of these cases is that the law, in case of such failure to deliver, implies a promise to repay in money.

Taking next the theory that the advances by plaintiff were payments on the purchase price of commodities to be sold and delivered to it by the defendant, the plaintiff was not compelled to sue for damages for breach of contract when the defendant refused to deliver, but could elect to sue for the return of the unused portion of its advances. For a recognition of this principle, see Weeter v. Reynolds, 48 Idaho 611 at 617, 284 P. 257; Peck v. Nixon, 47 Idaho 675, 277 P. 1112.

Sec. 62-508, I.C.A., a part of our sales act, provides that nothing in that law shall effect the right of the buyer to recover money paid where the consideration for the payment of it has failed.

Upon the refusal of a party to perform a contract, the other party who has paid money thereunder may treat the contract as rescinded and sue to recover his money, or may elect not to acquiesce in the rescission and sue for damages for the breach. House v. Piercy, 181 Cal. 247, 183 P. 807; Lemle v. Barry, 181 Cal. 1, 183 P. 150.

A buyer advancing money on a contract to purchase goods is entitled on breach by the seller to recover the amount advanced. Stella v. Smith, 109 Cal.App., 409, 293 P. 656; 17 Cal.Jur. 614; Am. Nat. Bank of Nashville v. Nat. Bank of Commerce, 132 Wash. 490, 232 P. 295; Vollmer v. Hayes Mach. Co., 129 App.Div. 426, 114 N.Y.S. 446; Bowers v. Dr. P. Phillips Co., 100 Fla. 695, 129 So. 850; Annotation, 30 L.R.A. 50; Brown v. Davidson, 42 Okl. 598, 142 P. 387. The action is treated by most courts as one for money had and received.

The law implies a promise on the part of the seller to repay the advance or purchase price received where he fails to deliver the goods contracted to be sold. Vanselow v. Bender, 175 Ill.App. 460; Murphy v. Dalton, 139 Mich. 79, 102 N.W. 277; 46 Am.Jur. 790; Flatow, Riley & Co. v. Roy Campbell Co., Tex.Com.App., 280 S.W. 517.

Where money is advanced on the purchase price of goods, and the seller fails or refuses to deliver, a suit to recover the money advanced is an implied contract for the direct payment of money permitting the issuance of an attachment. Santa Clara Valley Pete Fuel Co. v. Tuck, 53 Cal. 304; Redwood Fibre Products Co. v. Miller Manuf. Co., 61 Cal.App.2d 505, 143 P.2d 389; William Hanley Co. v. Combs, 48 Ore. 409, 87 P. 143.

384

While it has been frequently asserted that it is only where there is an entire failure of consideration, that the action for money had and received may be maintained to recover the amount paid under a contract, the sounder rule is that where the buyer has received part of a certain quantity of articles, which in their nature are severable, but the seller fails to deliver the entire quantity, although he has received the purchase price, the buyer is entitled to recover in an action for money had and received that proportion of the purchase price represented by the quantity of the articles the seller failed to deliver. In Hill v. Rewee, 52 Mass. 268, 11 Metc. 268, the Massachusetts court, speaking through Shaw, C. J., said: "* * * Then the rule is very well fixed, that where money is paid on an executory contract to deliver goods, or transfer stock, or the like, in future, and the contracting party fails to perform, it is in the election of the other party to treat the contract as rescinded, to disaffirm it, and recover back his money, as money paid upon a consideration which has failed; or to affirm the contract, and recover damages for the non-performance. * * * If, therefore, the defendant had failed wholly in the performance of his contract to deliver the hay, the plaintiff might disaffirm the contract, and recover back the money advanced, as money paid on a consideration which had failed, and held by the defendant to the plaintiff's use. And in modern times, it has been held, that where the contract fails in part, if it be a precise and definite part, capable of being ascertained by computation, a corresponding part of the purchase money may be recovered back, although the bargain or contract is in form entire. * * * The contract being for the delivery of a quantity of hay at a fixed price, and all of one quality, the price per ton fixed the price per pound. If then a part of the hay was delivered, according to the contract, but a precise and definite part remained undelivered, and the defendant, without justification or excuse, refused to deliver the other part on demand, the court were of opinion, that a corresponding portion of the money advanced, capable of being ascertained by computation, might be recovered back."

See also Stack v. Baird, 171 Wash. 651, 19 P.2d 105, where recovery of a proportionate part of the purchase price paid for wrecked steel was allowed.

In Smith v. Johnson, supra, plaintiff sued to recover an advance initially made on a contract for the purchase of peas. A portion of the commodity was delivered and paid for at the contract price, but the seller refused to deliver the balance. While the contention was made that plaintiff's only remedy was for breach of contract, the court held that since plaintiff's advance had not, prior to the breach, been used by credit on the price, he had received nothing for it, and was entitled to recover.

Likewise, in the case at bar, appellant made advances for which it has received

nothing, and the defendant has refused to make any further deliveries of property, title to which is still in him. Appellant should be repaid its unused advances, and the law implies a promise or contract on respondent's part to repay.

Under the facts alleged in the complaint, and particularly because the property contracted to be sold is severable in its nature, there is no reason why the rule permitting recovery of a proportionate part of the purchase price advanced should not apply. The situation here, after all, is no different than one where the seller has received the purchase price and thereafter refuses to deliver the goods contracted to be sold. Nor is there any need for the plaintiff to tender back anything received since the articles contracted to be sold are divisible by nature and plaintiff has fully paid for the portion delivered.

Whether the action is for a balance of an account, or a balance due on moneys loaned or advanced, or the refund of a portion of the purchase price paid on goods which the seller has refused to deliver, it is, under any of these theories, one upon an implied contract for the direct payment of money.

The order discharging the writ of attachment is therefore reversed. Costs to appellant.

GIVENS, C. J., and BUDGE, HOLDEN and MILLER, JJ., concur.