388 P.2d 1011

BANNOCK TITLE COMPANY, a corporation, Plaintiff-Respondent and Cross-Appellant,

v.

Maxine A. LINDSEY, now Maxine A. Corbett, Defendant-Respondent and Cross-Respondent,

W. D. Hale, Defendant-Appellant and Cross-Respondent,
N. H. Patton, Lester Rosen, Kenneth Harten, Patton and Linton, Inc., a corporation, and American Casualty Company of Reading, Pennsylvania, Defendants-Respondents and Cross-Respondents.

No. 9298.

Supreme Court of Idaho.

Dec. 20, 1963.

Rehearing Denied Feb. 12, 1964.

Robert W. Bennett, Pocatello, for appellant and cross-respondent, W. D. Hale.

O. R. Baum, Ben Peterson, Pocatello, for respondent and cross-appellant, Bannock Title Co.

Milton E. Zener, Pocatello, for respondent and cross-respondent, N. H. Patton.

A. A. Merrill, Idaho Falls, for respondent and cross-respondent, Maxine A. Lindsey, (now Maxine A. Corbett).

McFADDEN, Justice.

This declaratory judgment action was instituted by the Bannock Title Company, hereinafter referred to as the Title Company, seeking an order of the court directing how a certain fund it held should be disbursed. The fund in the amount of $8,131.04, represents the remaining balance of the proceeds of sale by Maxine A. Lindsey, (now Maxine A. Corbett) of what initially was her home and that of her former husband, Don Lindsey. The sale of this home (referred to herein as the "home property"), was made pursuant to the terms of a certain written stipulation entered in a district court action in Bannock County, brought by W. D. Hale against Don Lindsey, doing business as Lindsey Construction Company, Inc., and his wife, Maxine A. Lindsey, (referred to herein as the Hale-Lindsey action). The stipulation, dated December 21, 1959, was executed by Maxine A. Lindsey, W. D. Hale, and various secured creditors of Don and Maxine A. Lindsey, which creditors held as security either a mortgage or materialmen's liens on the home property. The stipulation, while executed and of record in the Hale-Lindsey action, was admitted in evidence in the instant cause, and provided that notwithstanding the property had been attached, Maxine Lindsey could sell it, and from the proceeds pay the named secured claimants holding the liens, with the balance of the proceeds to be held by the Title Company for disposition to the other claimants, who are the defendants in the instant action, subject to the order of the court. The home property was sold, the claimants secured by the liens on that property paid, and the balance of the proceeds deposited with the Title Company.

The answering defendants in the instant action are parties who claim an interest in the fund by reason of attachments on the home property arising in other actions, or by reason of claimed liens or interests. Defendant Hale, the appellant, in his complaint filed on May 13, 1959, in the Hale-Lindsey action, brought suit against Don

Lindsey and also Maxine A. Lindsey, who at that time were divorced. In his complaint Hale alleged that he had purchased from Don Lindsey Construction Company, Inc., a certain "fourplex" building situate on lots in Block 22, Pocatello Townsite, (which property is hereinafter referred to as the "fourplex" to distinguish it from the "home property"); that Don Lindsey did business either individually or under the corporate name, but he, owning all the stock in the corporation, was one and the same as the corporation; that Hale in purchasing the "fourplex" paid Lindsey $9,000 and assumed a $21,000 mortgage for the real property, and in exchange received a warranty deed to the property from the corporation; that Hale took possession of the property on February 11, 1959, (while Don and Maxine A. Lindsey were still married) and that subsequently there were laborer's and materialmen's liens of over $11,000 filed against the "fourplex" property. That Lindsey failed and refused to pay these liens. Hale sought judgment for the amount of the liens filed. A writ of attachment was issued May 13, 1959, on the basis of Hale's affidavit, and levied on both the home and "fourplex" property. On Hale's motion, levy under this writ of attachment was discharged as to the "fourplex" and also as to the home property. A new affidavit of attachment was filed, claiming only $8,584.89 in liens filed against the "fourplex", and June 10, 1959,

another writ of attachment was issued, with an amended complaint filed June 11, 1959. The sheriff's return to this latter writ shows his levy on the home property being made June 11, 1959. That action was dismissed as to Maxine A. Lindsey, she not having been served. Default judgment was entered against Don Lindsey and Don Lindsey doing business as Lindsey Construction Company, Inc., for the sum of $8,331.59, which judgment recited that the real property designated as the home property had been attached, and the court decreed the amount of the judgment constituted a lien against the home property as of June 11, 1959, the date of the sheriff's levy.

The home property, the subject of the attachment and the stipulation, was involved in the divorce action brought by Maxine A. Lindsey (another of the answering defendants herein) against Don Lindsey. Decree of divorce in that action was entered in the district court of Power county on March 13, 1959. That decree in addition to dissolving the marriage, divided the real and personal property of the parties, Don Lindsey being awarded as his sole and separate property the home property, the subject of the attachment in the Hale-Lindsey action.

The decree also burdened Don Lindsey with a $2,000 obligation owing to Lester Rosen, the father of Maxine A. Lindsey,

he being one of the defendants in the instant action. The decree also provided that such obligation was a lien on the home property, to be paid upon sale of the property or within three years.

N. H. Patton, another of the answering defendants named in the present action, brought suit against Don Lindsey, based on nonpayment of a $5,000 promissory note, and writ of attachment issued, which was levied on the home property the day following the attachment in the Hale-Lindsey action, i. e., June 12, 1959. Default judgment in this action was entered on September 6, 1960.

On July 6, 1959, a certified true copy of the divorce decree from Power County was recorded in Bannock County. On the same date, Don Lindsey executed an assignment of all interest in the home property to Maxine Lindsey, together with a quit claim deed to her of that property, and Maxine Lindsey filed a Declaration of Homestead on the property; these last three instruments were recorded by her on July 6, 1959, in Bannock county. Between March 13 and July 6, record title to the home property was in Don Lindsey as his sole and separate property.

The instant action was heard by the trial court on the pleadings and stipulations of the respective parties. Maxine A. Lindsey's answer sought disbursement of the funds held by the Title Company as follows:

First to pay such legal charges to the Title Company as fixed by the court; secondly: to pay Lester Rosen $2,000 plus interest, and finally the balance to her. The answer of N. H. Patton sought priority for payment of his judgment based on the promissory note of $5,000. The answer of W. D. Hale sought payment of the funds to him, or in the alternative the funds be pro rated among the various defendants, with credit to be given him by reason of another lien against the "fourplex" filed by McLelland Lumber Company.

The trial court submitted a memorandum of decision with findings of fact and conclusions of law and entered its decree: That Hale's attachment was void, and distributing the funds in the following order: (1) to the Title Company for its costs of suit, plus $32.00 as its fee in distribution of the funds; (2) to N. H. Patton, the full sum of his judgment in the case of N. H. Patton v. Don Lindsey; (3) to Lester Rosen $2,000, or so much thereof as funds permit after payment of the first two items; and (4) balance, if any, to Maxine A. Lindsey.

From this decree, W. D. Hale appeals; Bannock Title Co., also cross-appealed claiming it is entitled to fees as a trustee and attorney's fees.

Appellant Hale contends that by reason of his attachment of June 11, 1959, he is entitled to being first reimbursed, or at least that his claim should pro rate with that of

N. H. Patton. Respondent Patton claims that Hale's attachment of June 11, 1959, was invalid, first because it was not such a claim for which an attachment may issue, and secondly because of a prior writ of attachment having issued, and the levy of the writ of attachment of the real property having been released on Hale's motion, a subsequent attachment could not issue.

Maxine Lindsey challenges Hale's position and states: " * * * the Patton judgment and attachment is not good as against Lindsey and her father Rosen, and the court had no jurisdiction to decree that Patton came before Lindsey and Rosen in so far as the distribution of the trust funds, held by the Bannock Title Company is concerned." However, no cross-appeal from the decree was filed by Maxine Lindsey, and the issue as to the validity or priority of the Rosen claim is not now before this Court.

The first issue for determination is whether an attachment may properly issue on a claim for relief as set out in the complaint in the Hale-Lindsey action. I.C. § 8-501 provides:

"The plaintiff at the time of the issuing of summons, or at any time afterwards may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment as in this chapter provided in the following cases.

"1. In an action upon a judgment, or upon contract, express or implied, for the direct payment of money, where the contract is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property; or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, becomes valueless.

"2. * * *"

Hale's claim in his suit against Lindsey was based on the warranty deed delivered to him in consideration of the assumption of a $21,000 mortgage and payment of $9,000 cash. Hale took possession of the real property on February 11, 1959, subsequently liens against the property were filed, and under the allegations of the complaint, Lindsey refused to pay these liens, which encumbered the property of Hale contrary to the provisions of the warranty deed. I.C. § 55-612 provides:

"From the use of the word 'grant' in any conveyance by which an estate of inheritance, possessory right, or fee simple is to be passed, the following covenants, and none other, on the part of the grantor, for himself and his heirs, to the grantee, his heirs and assigns, are implied, unless restrained by

express terms contained in such conveyance:

"1. * * *

"2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made or suffered by the grantor, or any person claiming under him. *Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance.*" *(Emphasis added).*

I.C. § 55–613 defines encumbrances as follows:

"The term 'encumbrances' includes taxes, assessments, and all liens upon real property."

■■■ It is our conclusion, based on the foregoing statutes, that Hale's claim as set out in his complaint in the Hale-Lindsey action, is one based on the covenant contained in the warranty deed delivered by Lindsey, and is an action upon "contract, express or implied" as mentioned in I.C. § 8–501. This claim is within the contemplation of the statute requiring that the action be for the "direct payment of money." In Wallace v. Perry, 74 Idaho 86, 92, 257 P.2d 231, 235, this Court stated: "That the amount of recovery is uncertain and has to be proved does not defeat attachment. Eaton v. Queen, 78 Cal.App.2d 571, 177 P.2d 997, at page 999." The case of Eaton v. Queen, relied upon the reasoning of the Supreme Court of California in Force v. Hart, 205 Cal. 670, 673, 272 Pac. 583, 584 (1928), which is appropriate here:

" * * * The mere fact that the third cause of action sounded in damages would not defeat the right to the attachment. It is a well-recognized rule of law in this state that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite. (Citations). The fact that the damages are unliquidated is not determinative. (Citations). But the contract sued on must furnish a standard by which the amount due may be clearly ascertained, and there must exist a basis upon which the damages can be determined by proof. (Citations). The language of the court in Greenebaum v. Smith, 51 Cal.App. 692, 694, 197 P. 675, 676, may well be applied to the present case, where it is said:

" 'This being an action for damages for the breach of an executory contract defendant contends that it cannot be held to be an action on a contract for the direct payment of money. True, this is not an action for a debt in a technical sense, nor for a certain sum of money specified in the contract, but

it is nevertheless an action for the breach of a contract for the direct payment of money, and merely because the amount is uncertain, consisting of damages to be proven at the trial, is no reason why an attachment may not issue where, as here, such damages are easily ascertainable according to fixed standards supplied by the contract or the law acting upon it.' "

From the foregoing authorities, and considering that the California statute involved in the case of Force v. Hart, supra, is identical to I.C. § 8–501, the correct rule to be applied is that it is not essential the amount of the claim on the contract, express or implied, on which the attachment is based, be certain or liquidated, if it be of such nature that the damages are easily ascertainable according to fixed standards supplied by the contract or the law acting upon it. While respondent Patton contends that the Hale-Lindsey action is not one to authorize the issuance of a writ of attachment, citing the Texas case of Thomas v. Ellison, 102 Tex. 354, 116 S.W. 1141 (1909), such contention and authority is contrary to what we deem the more logically reasoned and better line of authority. Here the amount of Hale's recovery could be established by proof of the amount of the liens he was required to pay on the "fourplex".

Respondent Patton asserts that an "attachment cannot legally issue until a debt is due from the defendant to the plaintiff upon either express or implied contract." Citing Kerns v. McAulay, 8 Idaho 558, 69 P. 539; Gatward v. Wheeler, 10 Idaho 66, 77 P. 23; and Ross v. Gold Ridge Min. Co., 14 Idaho 687, 95 P. 821. He contends that the affidavits of attachment by Hale in the Hale-Lindsey action were fatally defective in that at the date of the affidavits no moneys were due and owing. It must first be pointed out that this Court in Kerns v. McAulay, supra, 8 Idaho at page 568, 69 P. at page 541 stated:

"Said statute [4303 Revised Statutes, now I.C. § 8–502], in terms, does not require the affidavit to state that the indebtedness is due, but by necessary implication it clearly requires it."

In Gatward v. Wheeler, supra, 10 Idaho at page 72, 77 P. at page 24, this Court reiterated such requirement in the following language:

"We find nothing in these authorities that we think would warrant us in changing our views expressed in Kerns v. McAulay. The attachment law is severe enough in its terms in this state, and we think the affidavit should state, in unequivocal language that the debt is due, before the writ should issue. It certainly cannot be said that under

the terms of the statute a writ of attachment can legally issue until the debt is due, and, this being true, it was evidently the intention of the Legislature that such fact should be shown by the affidavit."

However, in Ross v. Gold Ridge Min. Co., supra, this court departing from that position stated at page 693, 14 Idaho, at page 823 of 95 P:

"The statute does not require, either by express terms or by implication, that the affidavit shall contain an allegation that the 'debt is due.' Where the statute provides for filing an affidavit for a writ of attachment, and specifies what the affidavit shall contain, it is not necessary to allege any other facts than those specified in the statute. * * *

"We think the language used by this court in Kerns v. McAulay, supra, states the rule correctly, as follows: 'The affidavit for a writ of attachment must set forth all of the statutory requirements either in the language of the statute or in language of substantially the same purport or meaning,'—and any language used in that opinion to the contrary, as well as in the case of Gatward v. Wheeler, is disapproved and overruled."

■ Respondent Patton also claims Hale's attachment of June 11, 1959 was invalid, because of a prior writ of attachment having issued, a subsequent writ cannot issue as long as the first writ is outstanding. There is no merit to respondent Patton's contention that the writ of attachment of June, 1959, could not issue while the previous writ of attachment issued in May, 1959, was still outstanding. There is nothing in the statute prohibiting the issuance of subsequent or alias writs of attachment. See: 6 Am.Jur.2d, Attachments & Garnishment, § 278; 7 C.J.S. Attachment, § 200.

It is our conclusion that the writ of attachment issued June 10, 1959, with return made by the sheriff on June 11, 1959, was properly issued, and that the judgment in the Hale-Lindsey cause establishing the lien as of June 11, 1959, correct. However, under this determination a question arises as to whether respondent Patton, who filed his action on the promissory note on June 12, 1959, but only took judgment September 6, 1960, should have his judgment pro rated with that of Hale. I.C. § 8–503 provides:

" * * * Any creditor of the defendant, who, within thirty days after the first posting and publication of such notice, shall commence and thereafter diligently prosecute to final judgment his action for his claim against the defendant shall share pro rata with the attaching creditor in the proceeds of defendant's property where there is

not sufficient to pay all judgments in full against him."

For final disposition of such question, justice requires the trial court to afford the parties an opportunity to present such evidence as they shall desire pertaining to whether respondent Patton did in fact "diligently prosecute to final judgment his action * * *"

■ Bannock Title Company by its cross-appeal has as its sole assignment of error the failure of the trial court to allow a reasonable commission to it as trustee in the handling of the funds and in attempting to distribute the funds to the respective parties, and in failing to allow, in view of the stipulation of all the parties, a reasonable attorney fee to their attorney for the bringing of the action and prosecuting it to judgment.

The authority by which the Title Company received these funds was the stipulation entered in the Hale-Lindsey action. This stipulation was executed by Hale, and Maxine Lindsey, and also lien claimants on the so-called home property, together with the defendants herein. This stipulation was offered and admitted as an exhibit in the instant action. There is no provision in that stipulation for allowance of either fees to the Title Company for its services, nor for allowance of its fees for services of its attorneys. Under that stipulation the funds were to be held in lieu of the attachment liens on the home property and to be held subject to court order. This arrangement between the respective individuals, corporations and parties executing it partook more of the nature of an escrow to disburse the funds upon order of the court than an actual trustee relationship. The Title Company claimed no ownership in the funds for the benefit of anyone, as is normally the situation under a trust, but instead accepted the funds to be held subject to court order. In neither the Hale-Lindsey action, nor in this instant action, did the Trust Company seek to deposit these funds with the court for disposition under its order, as contemplated by I.R.C.P. 67.

The trial court, however, by its findings of fact and conclusions of law did determine that in addition to the Title Company's filing fees and costs of service incurred by it, the Title Company was entitled to receive $32.00 as a reasonable fee for the distribution of the funds, such sum being based on the reasonable and usual fee of an escrow holder in that area. By oral stipulation in the instant action the parties to this action agreed that "In the event the Court finds that the Bannock Title Company is entitled to a trustee's or handling fee, that the court may set the amount." Acting within the ambit of this stipulation, it cannot be said the court erred in fixing these fees in the amount allowed.

Cross-appellant has directed our attention to no authority either statutory or con-

tractual, justifying allowance to it of an attorney's fee in this action. The provisions of I.C. § 68–103 are not applicable, for as previously pointed out in this opinion, the Title Company was not acting as a trustee, but is to be considered as acting as an escrow holder.

That portion of the judgment of the trial court denying Hale's claim to the fund is reversed and the cause remanded to establish appellant Hale's judgment as a valid lien on the fund; the trial court shall further determine whether respondent Patton should pro rate in the fund held in lieu of the Hale attachment, and enter judgment accordingly. That portion of the judgment of the trial court from which cross-appellant Bannock Title Company appeals, is affirmed.

Costs to appellant Hale.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

McFADDEN, Justice.

The petition for rehearing presented by respondent N. H. Patton asserts that the amount of the judgment in the Hale-Lindsey action includes sums which were not properly established in that action. In particular it is asserted that the judgment includes the sum of $2,045 based upon a claim of payment by W. D. Hale on a lien of McLelland Lumber Company, Inc., which in fact was not paid nor assumed by Hale; further it is claimed that such judgment includes the amount paid by Hale for release of the lien of Elden L. Lowder, which claim was not a part of either the original or amended complaint upon which the default judgment in the Hale-Lindsey action was entered.

In the event that respondent Patton should be found by the trial court to be entitled to pro-rate in the proceeds of the funds held, Patton is thus in the position of a person not a party to an action, but is one whose rights are affected by the enforcement of the judgment. This court in Treece v. Treece, 84 Idaho 457, 460, 373 P. 2d 750, stated:

"* * * A judgment regular upon its face is conclusive upon the parties and their privies on all issues determined, or which should have been determined, thereby. Conversely, a judgment is not conclusive upon third persons who are neither parties or privies of parties thereto.

"'It is a well-settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party, or for collusion of both parties.' 30A Am.Jur., Judgments, § 879, p. 790.

" 'The general rule is that the absence of jurisdiction of a court to render a particular judgment constitutes sufficient cause for a collateral attack upon the judgment whenever it is sought to be enforced, or in any suit in which its validity is drawn in question, whether the absence of jurisdiction is in regard to the subject matter, the parties, or, in proceedings in rem, the res.' 30A Am.Jur., Judgments, § 880, pp. 791, 792.

" 'A stranger to the record, who was not a party to the action in which the judgment was rendered or in privity with a party is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by . the enforcement of the judgment, and which accrued prior to its rendition.' 49 C.J.S. Judgments § 414, pp. 818, 819."

I.R.C.P. 54(c) limits the entry of a default judgment to the relief prayed for in the complaint. I.R.C.P. 55(b) (2) contemplates the taking of proof by the court on default judgments, when required to establish the truth of any averment. The validity of the judgment in the Hale-Lindsey action is thus subject to attack by respondent Patton.

The trial court is directed to determine whether respondent Patton should pro-rate in the funds held by the respondent Bannock Title Company; if such determination is favorable to Patton it then shall proceed to the issue of the correctness of the Hale-Lindsey judgment in the particulars mentioned, insofar as they affect the claim of respondent, Patton; the court may receive and consider such competent evidence as is deemed necessary.

With such additional directions to the trial court respondent Patton's petition for rehearing is denied.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.