Argued June 23; affirmed July 13, 1937

# PINNACLE PACKING CO., INC., *v.*
# HERBERT ET AL.

(70 P. (2d) 31)

*Porter J. Neff*, of Medford (Neff & Frohnmayer, of Medford, on the brief), for appellant.

*W. M. McAllister*, of Medford (G. M. Roberts, of Medford, on the brief), for respondent.

BAILEY, J. The plaintiff, Pinnacle Packing Company, Inc., an Oregon corporation, brought this action to recover from the defendants, Mrs. S. Milanie Herbert and William Kantor, the sum of $1,319.31 with interest at the rate of 6 per cent per annum from May 31, 1935. From a judgment in favor of the plaintiff and against both defendants for the amount prayed for Mrs. Herbert appeals.

In 1934 and for several years prior thereto Mrs. Herbert was the owner of a tract of land comprising approximately 102 acres in Jackson county, Oregon, known as Soulard orchard, planted to deciduous fruits. Prior to the 1934 crop year Mrs. Herbert managed and operated the orchard. In November, 1933, she leased the orchard to Joe Kantor for a period of five years, with the expectation that he would procure from the Regional Agricultural Credit Corporation funds with which to care for and harvest the crops. That corporation, however, refused to make any loan to him, for the reason that he had another loan with it and was unable to give

the security required. His lease was canceled about February 24, 1934.

On March 22 of that year the defendant William Kantor, a son of Joe Kantor, entered into a written lease with Mrs. Herbert, by the terms of which the lessee agreed to "furnish all labor, materials, equipment, and to pay for all expenses incurred in the production and harvesting of crops," and to care for the orchard properly and do other work necessary to be done to maintain the orchard in good condition. The lessee was to have two-thirds of all crops grown on the premises, and Mrs. Herbert, the owner, was to have one-third. The lease commenced March 22, 1934, and was to terminate November 21, 1938.

The defendants thereafter borrowed from the credit corporation the sum of $4,568, evidenced by their promissory note, which was secured by a mortgage executed by both defendants, acknowledged April 6, 1934, covering all crops grown on said tract of land owned by Mrs. Herbert, and covering all harvesting and farm machinery, tools, equipment and livestock on the property, also owned by Mrs. Herbert.

In this mortgage in printed form the makers thereof are referred to, regardless of number, as "the mortgagor". The said mortgage contains among others the following provisions:

"The mortgagor further covenants and agrees that they will well and carefully plow, till, cultivate and seed and otherwise operate said property and tend, care for and protect said crops while growing, and that when they have reached maturity they will take all steps necessary to harvest the same and deliver the same into the possession of the mortgagee stored in proper containers in the usual manner."

On the same day that this mortgage was acknowledged, a contract was entered into between the plaintiff, the defendants and Medford National Bank, which was as follows:

"This agreement made this 6th day of April, 1934, between S. Milanie Herbert, first party, William Kantor, second party, Pinnacle Packing Co., Inc., third party, and Medford National Bank, fourth party, witnesseth:

"The first party is the owner of Soulard orchard; second party has a lease upon the same for the current year; first and second parties have made application to the Regional Agricultural Credit Corporation, Portland branch, for a loan of $4,568.00 to finance the operation of said orchard during the current year and it will require approximately $1,500.00 additional money to produce the crop and deliver the same in the packing house.

"The parties agree as follows: It is agreed that said loan when obtained shall be disbursed under the supervision of third party and that the second party shall receive $50.00 per month during the growing season for his services up to and including the month of October, 1934, and beginning April 1, 1934. It is further agreed that when the loan is received, that the actual labor claims for work already performed and furnished by second party shall be paid. It is further agreed that the fruit be handled and sold by the third party under its usual contract, and that when the fruit is delivered at the warehouse of the third party he will finance the packing, shipping and selling of the same, said charges to be a first claim on the proceeds of the fruit. It is further agreed that the additional moneys needed to make the crop up to $1,500.00 are to be furnished in equal shares by the party of the third part and the party of the fourth part, and that all moneys received from the crops shall be applied first, to the payment of the packing and selling charges, including storage, freight, etc., second, to the payment of the loan to the Regional Agricultural Credit Corporation;

third, to repay the advances made by third and fourth parties as aforesaid, and that the balance shall belong to the parties of the first and second part in accordance with the terms of their lease.

"In witness whereof, the parties have hereunto set their hands and seals this the day and year first hereinabove written.

> "S. Milanie Herbert, First Party.
>
> "Wm. Kantor, Second Party.
>
> "Pinnacle Packing Co., Inc.
> "By R. R. Reter, Mgr., Third Party.
>
> "Medford National Bank,
> "By J. A. Perry, Pres., Fourth Party."

The contract above set forth, it will be noted, provides that "It is further agreed that the fruit be handled and sold by the third party under its usual contract, and that when the fruit is delivered at the warehouse of the third party he will finance the packing, shipping and selling of the same, said charges to be a first claim on the proceeds of the fruit."

A copy of the form of the "usual contract" mentioned was admitted in evidence without objection. It purports to be an agreement between the "grower" and the "marketing or selling agent," which latter, as the record shows, was the packing company. The contract form states that it "is intended as a marketing contract and a real and chattel mortgage to secure unto the selling agent the payment of any and all sums of money and any and all other advances and indebtedness of every kind, nature and description, whether heretofore or which may be hereafter made, either upon and evidenced by an open account or by a promissory note, or otherwise, made to said grower * * * by said selling agent, and any and all materials of every kind,

nature and description heretofore or which may be hereafter sold to said grower * * * by said selling agent, the full purchase price of which has not been or which may not be fully paid at said time''. This agreement also provides for the advancing of money not exceeding a definite sum, by the marketing or selling agent, and provides for the repayment of any money advanced to or on behalf of the grower or paid by the marketing agent for materials supplied for the use of said grower. No such marketing agreement as contained in the form of contract here described was made out or executed by the parties to the above-quoted contract or any of them, although the record discloses that the fruit grown on the defendant Mrs. Herbert's land was delivered to the packing company and by it handled and sold, without objection, in the manner provided by its ''usual contract''.

After Mrs. Herbert discovered that the credit corporation would not loan any money to Joe Kantor she consulted the officers of the bank and those of the packing company, and requested that they assist her in obtaining the necessary financing to grow and harvest her 1934 crop. After some delay the defendant William Kantor was obtained, through the assistance of the bank and the packing company, as a tenant of Mrs. Herbert to operate the orchard.

In negotiating the loan with the credit corporation it was estimated that there would be required approximately $6,000 to produce and harvest the crop, and the credit corporation agreed to loan in the neighborhood of $4,568, if the difference between the amount loaned by it and the necessary $6,000 could be procured. Mrs. Herbert thereupon sought the advice and assistance of the packing company and the bank, and finally

the two agreed to advance up to $1,500, if necessary to meet operating costs up to the time of delivery of the fruit to the warehouse. When this assurance was obtained by Mrs. Herbert the credit corporation made advances totaling $4,568, secured by the mortgage above mentioned. At the same time, as above stated, the contract between the plaintiff, the two defendants and the bank was executed. Under the agreement between the parties the money advanced by the credit corporation was turned over to the packing company and by it disbursed in cultivating and harvesting the fruit crop.

The defendant William Kantor was not at all active in procuring the loan from the credit corporation or in obtaining the assurance of further financing or the contract with the bank and the packing company.

There was expended on the Soulard orchard, under the supervision of the packing company, the sum of $9,388.06, which included the $4,568 loaned by the credit corporation; and there has been paid or credited on the amount so expended the sum of $8,068.75, including the amount repaid to the credit corporation, leaving unpaid and owing to the plaintiff the sum of $1,319.31. All of this latter sum was furnished by the packing company. Of the amount advanced by it, $100 was paid direct to Mrs. Herbert for her own use and benefit. The bank did not advance any money under the contract.

Neither Mrs. Herbert nor Kantor made any express promise, either orally or in writing, to the bank or the packing company, to repay the money advanced by them or either of them, other than the reference to disbursement of the money received by the packing company as proceeds of the fruit.

Sections 9-215 and 9-216, Oregon Code 1930, provide as follows:

§ 9-215. "In the construction of a statute the intention of the legislature, and in the construction of an instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."

§ 9-216. "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

It was for the purpose of placing the court in the position of the contracting parties and arriving at their intention that a comprehensive narrative of the negotiations between the litigants has been set out in the above statement of facts.

Reviewing briefly the facts in the case, we find that at the time the contract hereinabove quoted was executed by the litigants and the bank both defendants had completed or were about to complete negotiations with the credit corporation for a loan of $4,568, and both of them in order to obtain the loan had agreed to do all things necessary to grow and harvest the fruit on Mrs. Herbert's land and deliver the same for sale; and that the money was loaned to the defendants by the credit corporation on the express understanding that $1,500 more would be available to make up the $6,000 necessary to accomplish what the defendants had undertaken. We also note that Mrs. Herbert was the more active of the two defendants in procuring the loan from the credit corporation and the advances

which the packing company and the bank agreed to make, and that she was interested not only in the one-third of the crop which she was to receive under her contract with the defendant Kantor but was also interested in preserving and protecting her orchard.

Turning now to the contract above set forth, we find (1) that the loan from the credit corporation is therein mentioned, as is the further fact that it requires an additional $1,500 to grow and deliver the crop to the packing house; (2) that this $1,500 is referred to as an advance to be made by the packing company and the bank; and (3) that the making of such advance was not to be considered as a voluntary payment of $1,500, inasmuch as the contract refers to a repayment thereof. There is not shown by the record any express oral or written agreement on the part of either defendant to repay the money so advanced.

In 6 R. C. L., page 855, § 243, we find the following statement:

"The existing statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it. All contracts are therefore to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties, except where the contract discloses an intention to depart therefrom."

■ Where loans are made or funds furnished at the special instance and request of an individual, and for and on behalf of him, the law presumes, unless there is a contract to the contrary, that the same are to be repaid: 41 C. J., pages 2 and 3, §§ 2 and 3. In *Couts v. Winston*, 153 Cal. 686 (96 P. 357), a deed was given as security for the payment of certain money loaned by the defendants to the plaintiffs. No promissory

note or other written instrument evidencing any indebtedness was executed. Suit was brought by the plaintiffs to have the deed declared a mortgage and to redeem the land. It was there contended by the defendants that there was no promise by either of the plaintiffs to repay the money and that therefore no debt existed, with the result that if no debt did exist there could be no mortgage. In answer to this contention the court said:

"It is urged that there is no direct evidence of a promise by either of the plaintiffs to repay the amount advanced, and that there can be no mortgage if there is no indebtedness. Ahern v. McCarthy, *supra* [107 Cal. 382, 40 P. 482]; Henley v. Hotaling, 41 Cal. 28. But if, as Couts says, he applied to the defendants for a loan, and they acceded to his request, a promise on his part to repay the money advanced in consequence of these negotiations is to be implied in fact as well as in law. The circumstances of the whole case, if we accept the testimony acted on by the trial court, are entirely consistent with the view that the parties, while in fact agreeing on a loan to be secured by mortgage, were desirous, for reasons of their own, of giving the transaction a different appearance."

Somewhat analogous with the instant case is *Long v. Straus,* 107 Ind. 94 (6 N. E. 123, 7 N. E. 763, 57 Am. Rep. 87), wherein the defendants received certain money from the plaintiff and gave a receipt stating that the same had been received on deposit. The court, after referring to the receipt, stated:

"The instrument would not, in legal contemplation, have been one whit clearer if the parties had stated at full length all the details of their agreement. The language used creates a contract, and the law implies, as part of the contract, that on reasonable demand the depositor is entitled to receive back that which belongs to him. * * * It needs no express words to create

this obligation to return the money; the law makes it an attribute of the contract. It would shock every one's sense of justice to affirm that a depositor could not get back his money unless there is an express promise to return it to him, but this can not be affirmed without doing violence to the settled principles of jurisprudence. In affirming, as we do, that the law enters into every contract unless expressly excluded, we do no more than restate one among the oldest rules in the law of contracts. 'Every agreement and promise,' says Mr. Pollock, 'enforceable by law is a contract.' Pollock Prin. of Cont. 1.

"We have here an agreement enforceable by law, and, therefore, a contract. The promise of the signers is, to be sure, an implied one, but is none the less a legal promise, involved in the language employed by the contracting parties. To deny that the law will, where justice requires it, imply a promise that may be enforced, would be to dispute a doctrine that runs back to the earliest years of the common law, and, surely, there can be no case where justice more imperatively requires that such a promise should be implied than one where money is received on deposit, for it is inconceivable that the person so receiving money should be under no obligation to return or repay it to the depositor. The promise here, however, is part of the contract itself, for to the language used in the instrument the law affixes a definite meaning."

In 6 R. C. L., page 856, § 244, it is observed:

"Necessary implication is, beyond doubt, as much a part of an instrument as if that which is so implied were plainly expressed. If it can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it. The policy of the law is to

supply in contracts what is presumed to have been inadvertently omitted by the parties, the parties being supposed to have made those stipulations which as honest, fair and just men they ought to have made. Therefore, whatever may fairly be implied from the terms or nature of an instrument is, in judgment of law, contained in it.''

■ Reverting again to the terms and conditions of the contract here involved, we note that the money received by the packing company as proceeds of the fruit grown on the defendant Mrs. Herbert's land and delivered to it is to be applied: first, to the storage, freight, packing and selling charges; second, to the payment of the loan from the credit corporation; and third, ''to repay the advances made by third and fourth parties as aforesaid''. There is no provision contained in this written agreement, nor is there any evidence in the record, to the effect that repayment of the money so advanced was to be limited to the proceeds of sale of the fruit delivered to the packing company. The fact that the money from the sale of the fruit was to be applied in a certain manner does not preclude the implication that the defendants were under personal obligation to repay the advances which had been made at their special instance and request. The provisions of the contract are not susceptible to the construction placed upon it by the defendant Mrs. Herbert, i. e., that repayment of the advances made by the plaintiff is limited to the funds realized from the sale of the fruit grown in Soulard orchard.

■ If it be said that the wording of this contract is somewhat indefinite or ambiguous as to repayment of money so advanced, then resort may be had to the rule for interpretation of contracts that since the contract was prepared by the attorney representing Mrs. Her-

bert it is to be construed most strongly against her: *Salem King's Products Co. v. Ramp,* 100 Or. 329 (196 P. 401) ; *First National Bank v. United States Fidelity & Guaranty Co.,* 127 Or. 147, 162 (271 P. 56) ; *Oregon Surety & Casualty Co. v. United States National Bank,* 136 Or. 573, 583 (300 P. 336).

■ The fact that Mrs. Herbert had leased the Soulard orchard to the defendant William Kantor and that in the leasing contract he had agreed to pay all expenses in connection with the growing and harvesting of the fruit does not relieve Mrs. Herbert from liability to repay to plaintiff the money which it advanced at her special instance and request for and on behalf of herself and her lessee. By the terms of that agreement the rights of the parties thereto as to participation in the proceeds of sale of the crop are to be determined. That Mrs. Herbert did not leave to her lessee the entire financing of the growing and harvesting of the crop is evidenced by the mortgage which she signed in favor of the credit corporation, and her activity in procuring financial assistance from the plaintiff.

The appellant, Mrs. Herbert, relies largely on the provisions of § 9-212, Oregon Code 1930, and claims that under that section parol evidence can not be introduced to alter the terms of the contract. By the construction which we have placed on the contract, the terms and conditions thereof have not been altered by parol evidence. It is further argued that in view of § 9-214, Oregon Code 1930, a "court may not by implication put into a written instrument what the parties have left out of it or reject what they have put into it, unless repugnant to some other part". Several cases are cited in support of this contention, some of which have to do with an attempt to vary the plain provisions of a

written contract by parol evidence or by an implication which the law does not supply. We have given all the authorities cited by the appellant careful consideration, and are of the opinion that they do not change the rule of law hereinabove enunciated.

On the whole case we conclude that the circuit court did not err in holding that the plaintiff was entitled to recover from the defendants the $1,319.31 advanced by it. The judgment appealed from is therefore affirmed.

BEAN, C. J., and CAMPBELL and RAND, JJ., concur.