Argued and submitted February 28, reversed and remanded May 16, 2007

## Robert MORROW
### and Ann Morrow,
### husband and wife,
*Plaintiffs-Appellants,*

*v.*

## RED SHIELD INSURANCE COMPANY,
*Defendant-Respondent,*

*and*

## MIKE DEVANEY INSURANCE AGENCY,
*Defendant.*

Multnomah County Circuit Court
041112024; A130859

159 P3d 384

Robert B. Coleman argued the cause for appellant. With him on the brief were John Spencer Stewart and Stewart Sokol & Gray LLC.

Jay W. Beattie argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, LLP.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Plaintiffs Robert and Ann Morrow appeal from a judgment of the trial court dismissing their breach of contract claims against defendant Red Shield Insurance Co., based on defendant's failure to process a requested change of address for a policy of fire insurance on their boathouse. The trial court granted summary judgment to defendant. We agree with plaintiffs that there are material issues of fact precluding summary judgment as to one of the claims, and reverse.

We state the facts in the light most favorable to plaintiffs, the nonmoving parties. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Plaintiffs first purchased a fire insurance policy from defendant in August 1999 to insure their floating home that was moored at a marina on Hayden Island in Portland. The policy would have lapsed in 12 months if not renewed. In 2000, plaintiffs received a 2000-01 "Renewal Quote" from defendant, inviting them to renew the policy for another 12 months and to note any changes. The form included a table with columns stating plaintiffs' coverage, limits, and premium, and a fourth column for "CHANGES (if desired)." Plaintiffs wanted to continue the same coverage, but to change the named insured from plaintiffs to MOCON Corporation. At the bottom of the form, Ann Morrow wrote, "Please change Insured to MOCON Corporation." She also provided a new address for MOCON Corporation and checked boxes marked "Renew with changes" and "Renew as quoted."

In July 2001, plaintiffs received a 2001-02 Renewal Quote from defendant at the address provided by plaintiffs the previous year for MOCON Corporation. The document was addressed to "Robert Morrow & Ann Morrow, DBA MOCON CORPORATION." Ann Morrow returned the form and a premium payment, checking "Renew as quoted." Upon receipt of the 2001-02 Renewal Quote, defendant's agent unilaterally removed MOCON as a named insured and issued a policy in plaintiffs' names. It is undisputed for purposes of summary judgment that the 2001-02 policy contained this provision relating to nonrenewal:

"We may elect not to renew this policy. We may do so by delivering to you, or mailing to you *at your mailing address shown in the Declarations*, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice."

(Emphasis added.)

In July 2002, plaintiffs received a 2002-03 Renewal Quote at MOCON's address, listing plaintiffs, but not MOCON, as the named insureds. At that time, plaintiffs anticipated a change in MOCON's address. Ann Morrow had created "new address" notices for MOCON, which she included with each correspondence. The notices were typed on an 8½" by 11" sheet of colored paper. MOCON's logo was in the upper left corner. In the center of the page were the words "NEW ADDRESS," followed by an address. Although Ann Morrow does not specifically recall including a new address notice with the 2002-03 Renewal Quote, she testified by deposition that she was certain that she had included such a notice in the same envelope with the Renewal Quote because it was her unvarying practice to do so with all correspondence during that period of time. The same Renewal Quote included a "Renewal Questionnaire." One of the questions was "Do you maintain another residence?" Ann Morrow checked the box "yes" and explained below, "we reside in rental property in Vancouver Wa." On the 2002-03 Renewal Quote, Ann Morrow also checked the box "Renew as quoted," and returned the form to defendant with the premium payment for 2002-03.

Defendant did not change the mailing address for plaintiffs in its records or on the Declarations page of the 2002-03 policy. Defendant sent the 2002-03 policy to the address on the Declarations page, MOCON's former address. It was returned to defendant and plaintiffs never received it. In May 2003, defendant sent a 2003-04 Renewal Quote to the same address. The form was returned to defendant as undeliverable. No renewal quote for 2003-04 was sent to the address plaintiffs claim to have provided to defendant when they renewed the policy for 2002-03. No notice of cancellation or nonrenewal reached plaintiffs at their correct address. On August 31, 2003, plaintiffs' 2002-03 policy expired by its

terms. On November 3, 2003, plaintiffs' floating home was destroyed by fire.

In their complaint, plaintiffs alleged claims of breach of the 2001-02 policy of insurance on two theories: (1) breach of an "implied by necessity" term of the policy; and (2) breach of the implied covenant of good faith and fair dealing. As relevant, the complaint alleged identical specifications of breach with respect to each claim:

"(a) Failing to record Plaintiffs' change of address, or, if recorded failing to send notices to Plaintiffs at their SE Mill Plain address rather than Plaintiffs' old N. Jantzen address;

"(b) Failing to make any effort to contact Plaintiffs after Defendant Red Shield was informed that the notices to Plaintiffs' N. Jantzen address were not deliverable[.]"

At the hearing on defendant's motion for summary judgment, plaintiffs' counsel explained the theories, which are also pursued on appeal. As noted, the policy contains no instruction for providing a change of address and does not expressly require defendant to process a requested change of address. Plaintiffs contend, nonetheless, that the obligation to process or take some action on an address change request is either implied by necessity, as essential to the operation of the contract, or encompassed within the implied covenant of good faith and fair dealing. In plaintiffs' view, the obligation to process a change of address request is a necessary part of the contract, in light of defendant's obligation to give notice of nonrenewal to the insured at the address on the Declaration page.[1] If, in plaintiffs' view, it is not a necessarily implied term of the contract that defendant must process requested

---

[1] The trial court explained its understanding of the necessary implication claim:

"And so the specific terms of this policy [requiring mailing to the address in the Declarations] have been complied with. Your real argument is that even though this says this, there is an implied term that the insurance company also has an obligation to make sure somehow that the mailing address shown in the declarations is the correct address. And that in turn implies an obligation to read and properly process a change of address form that is sent * * * to the insurance company by the insured."

address changes, then the obligation to give notice of nonrenewal to the insured would be a pointless act if the insured has moved.

Defendant disputes the applicability of the doctrine of necessary implication, contending that terms may be implied only if they are necessitated by the express terms of the agreement, and that there are no express terms in the policy, which expires by its own terms after one year, that necessitate implication of an obligation to process address change requests.

As to the implied duty of good faith and fair dealing, plaintiffs explained to the trial court that, when defendant received plaintiffs' change of address notice, defendant had an obligation to process that request or, if the notice was inadequate, to follow up on the request by making further inquiry of plaintiffs. Plaintiffs offered evidence that defendant would have considered plaintiffs' notice to be sufficient to, at a minimum, trigger further inquiry. Plaintiffs pursue that theory on appeal as well.

Defendant concedes that, under the implied covenant of good faith and fair dealing, it has a duty to process requested address changes *if* they are properly made under the contract and *if* they are not inconsistent with the express terms of the contract. In this particular case, defendant contends, the requested change was not properly made, because it was made on a separate sheet of paper and not on the renewal quote itself, it was not signed by the insured, the change of address slip did not show that the new address was for the insured, rather than for MOCON, and, finally, it was not received by defendant. Additionally, defendant contends, the processing of the request would have been inconsistent with plaintiffs' express instruction on the 2002-03 Renewal Quote to renew the policy "as quoted"—which, as quoted, included plaintiffs' former incorrect address.[2] Defendant

---

[2] Defendant argues:

"Here, Red Shield offered coverage as stated in the renewal quote which included plaintiffs' Jantzen Beach address. * * * Although plaintiffs claim they included a change of address notice with their completed renewal quote, the renewal quote expressly directed Red Shield to renew the Policy 'as quoted' without any changes. * * * Plaintiffs cannot complain that Red Shield violated an implied covenant by doing what it was *expressly* told to do, *vis.*, by renewing the Policy 'as quoted' complete with their Jantzen Beach address."

offered evidence on summary judgment that a change to the policy must be made in writing and signed by the insured and approved by defendant. Plaintiffs offered evidence that defendant does not consider an address change to be a change to the policy, so plaintiffs' checking of the box to renew the policy "as quoted" would not have been inconsistent with a requested address change. Plaintiffs also offered evidence that defendant would not have rejected as inadequate a change of address submitted on a separate piece of paper.

The trial court struggled with the case. The court said, "I accept that an insured can send in to an insurance company a change of address form in all sorts of ways. And I accept that the insurance company has at least a duty, a reasonable duty, obligation, to properly process that." Ultimately, however, the court rejected each claim and granted defendant's motion for summary judgment, concluding that plaintiffs' claims are not cognizable in contract.

■ On appeal, the parties renew their arguments. We regress for a moment to identify precisely what those arguments are. In their complaint, plaintiffs allege that defendant breached the agreement by "failing to record Plaintiffs' change of address," and that, although such a requirement is not expressly included in the contract, it is necessarily implied or encompassed within the duty of good faith and fair dealing that exists in every contract. At the hearing on summary judgment, the alleged theory of breach underwent a slight transformation. Plaintiffs and the trial court spoke about the insurer's alleged obligation to "process" an address change request, or to take some action on receipt of a new address notice. On appeal, as noted, plaintiffs adhere to that characterization of the claims, but defendant focuses on what it insists is the issue on appeal—not whether defendant had a duty to *process* a requested address change, but whether, as plaintiffs *pleaded*, the defendant has a duty to "automatically" amend the Declarations page of the policy on receipt of a requested address change, even if unsigned by the insured. Because we conclude that the wording of the complaint ("failing to record") is susceptible to an interpretation that does not necessarily describe only recording of the new address *on the Declarations page*, we conclude that the pleading is broad enough to encompass the theory of the claims that plaintiff

and the trial court discussed at the summary judgment hearing, and on which the trial court apparently based its ruling. Accordingly, that is the theory that we address on appeal— whether defendant had an obligation under the contract, either implied by necessity or encompassed within the duty of good faith and fair dealing, *to process* or take some action on plaintiffs' requested address change.

Following the analysis described in *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997), the first step is to examine the text of the disputed provision in the context of the document as a whole. If the text's meaning is unambiguous, we decide the provision's meaning as a matter of law. *Id.* The parties agree that the 2001-02 policy in effect at the time plaintiffs sent to defendant the disputed new address form stated, in relevant part:

> "We may elect not to renew this policy. We may do so by delivering to you, or mailing to you *at your mailing address shown in the Declarations*, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice."

(Emphasis added.) The Declarations page, in turn, stated the address of the insured, and described the insured property and the coverage. The policy further provided that "a waiver or change of a provision of this policy must be in writing by us to be valid."

By its own terms, the text of the policy is unambiguous. The mailing address of the insured is stated on the Declarations page. Defendant can choose not to renew a policy by giving notice to the policyholder "at [the policyholder's] mailing address shown in the Declarations." The policy makes no provision for a change of address by the insured. Defendant complied literally with the terms of the policy by giving notice of nonrenewal to plaintiffs' address as shown on the Declarations page.

We next consider whether, by necessary implication, the contract imposes an obligation on defendant to process an address change request by an insured. In *Card v. Stirnweis*, 232 Or 123, 374 P2d 472 (1962), the Supreme Court reviewed

decisional law and treatises explaining the doctrine of necessary implication. The law will imply a provision in a contract that is necessary to carry out the purpose for which the contract was made. 232 Or at 134. Whether a provision is implied by necessity is a legal question that we decide as a matter of contract construction. *Pinnacle Packing Co. v. Herbert*, 157 Or 96, 105-06, 70 P2d 31 (1937).[3] Although a court may declare what is implicit in the terms of a contract, it may not create an entirely new obligation under the guise of "necessary implication." We readily conclude that an obligation concerning the processing of an address change is not a term that must necessarily be implied under the terms of plaintiffs' fire insurance policy with defendant. The purpose of the policy was to insure the property of the insured against fire loss for one year. The policy expired by its own terms after one year. The notice provision for nonrenewal on which plaintiffs rely as the source of the obligation relates to the creation of a new contract of insurance for the subsequent year and is not related to the central purpose of insuring the property subject to the policy. Accordingly, we conclude that an obligation to process an address change request is not necessarily implied from the terms of the policy.

We move on to plaintiffs' contention that such an obligation is nonetheless encompassed within the duty of good faith and fair dealing. All contracts include an implied covenant of good faith and fair dealing. *Zygar v. Johnson*, 169 Or App 638, 645, 10 P3d 326 (2000), *rev den,* 331 Or 584 (2001). The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract

---

[3] The court stated:

"Necessary implication is, beyond doubt, as much a part of an instrument as if that which is so implied were plainly expressed. If it can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted by the parties, the parties being supposed to have made those stipulations which as honest, fair and just men they ought to have made. Therefore, whatever may fairly be implied from the terms or nature of an instrument is, in judgment of law, contained in it."

157 Or at 106, *quoting* 6 RCL 855.

when it is consistent with and in furtherance of the agreed-upon terms of the contract, or where it effectuates the parties' objectively reasonable expectations under the contract; however, the implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract. *Best v. U. S. National Bank*, 303 Or 557, 563, 739 P2d 554 (1987). It is possible that, despite our conclusion that an obligation to process an address change request is not necessarily implied as a part of the policy, that obligation was nonetheless encompassed within the duty of good faith and fair dealing. As noted, defendant concedes that the contract encompasses a good faith duty to process an address change request, assuming that the request is properly made and does not contradict the express terms of the policy. We agree with plaintiffs that it is within the parties' reasonable expectations that, if the insured provides a change of address, the insurer will take action on that request, either by making the necessary change to the Declarations page or following up on the request.

 The remaining question is whether, in this particular case, a genuine issue of material fact exists as to whether defendant breached that duty. ORCP 47 C. Plaintiffs contend that the record on summary judgment contains evidence that defendant did nothing with plaintiffs' notice of address change when it received the notice. We agree that is a fact that can be inferred. Defendant counters that it did not receive plaintiffs' notice and that, in any event, the notice would not have been "acceptable" to defendant. We agree with plaintiffs that those are questions of fact to be decided by the factfinder. We accordingly conclude that the trial court erred in granting summary judgment to defendant on plaintiffs' breach of contract claim based on the duty of good faith and fair dealing and we reverse the judgment and remand for further proceedings.

Reversed and remanded.