Argued and submitted July 24, 2014, affirmed February 3, 2016

HYNIX SEMICONDUCTOR
MANUFACTURING AMERICA,
a California corporation;
Hyundai Marine & Fire Insurance Company Limited,
a Korean public limited company;
and Certain Underwriters at Lloyds, London,
a foreign insurance syndicate,
*Plaintiffs-Appellants,*

*v.*

EUGENE WATER & ELECTRIC BOARD,
an Oregon public utility,
*Defendant-Respondent.*

Lane County Circuit Court
161218054; A154528

367 P3d 927

Larry E. Altenbrun argued the cause for appellants. With him on the briefs was Nicoll Black & Feig, PLLC.

Eric S. DeFreest argued the cause for respondent. With him on the brief was Luvaas Cobb.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Hynix, a semiconductor manufacturing facility, entered into a contract (Power Sales Agreement) with defendant, Eugene Water & Electric Board (EWEB), to purchase all of the electricity requirements for Hynix's Eugene facility. Hynix and its insurers (plaintiffs) subsequently brought an action for breach of contract for damages sustained by that facility during a 2007 power outage. The trial court entered a judgment of dismissal after denying plaintiffs' motion for partial summary judgment and granting EWEB's cross-motion for summary judgment. On appeal, plaintiffs assign error to the trial court's summary judgment rulings, in which the court concluded that the Power Sales Agreement between Hynix and EWEB relieved EWEB from liability for a power interruption which occurred in 2007, and that plaintiffs were not entitled to prejudgment interest in the event that their claims were successful. We write only to address plaintiffs' first and third assignments of error, which involve the issue of whether plaintiffs' or EWEB's proposed interpretation of the contract as to liability in the event of a power interruption is correct as a matter of law.

Plaintiffs argue that the only reasonable interpretation of the agreement is that EWEB was liable to Hynix for damages resulting from interruptions of power that, like the 2007 outage, occurred due to causes within EWEB's reasonable control. EWEB responds that, to the contrary, the only reasonable interpretation of the contract is that the agreement relieved EWEB from liability in the event of any interruption of power, including the 2007 power outage. We agree with EWEB that the contract unambiguously relieved it from liability for the 2007 outage. We therefore affirm the trial court's summary judgment rulings.[1]

Where, as here, a case was resolved on cross-motions for summary judgment, and the losing party assigns error both to the grant of summary judgment to the other party and to the denial of its own motion for summary judgment, we review to determine "whether there are any disputed issues of material fact and whether either party was entitled

_____

[1] This disposition obviates the need to address plaintiffs' second assignment of error, regarding prejudgment interest.

to judgment as a matter of law." *Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d 330 (2007). In this case, the facts are undisputed; the only issue before us is one of law.

In 2006, Hynix entered into a Power Sales Agreement with EWEB which required EWEB to sell, and Hynix to purchase, all of the electricity needed for Hynix's semiconductor manufacturing facility in Eugene. Both parties were aware that an unexpected interruption of electrical power could damage Hynix's manufacturing equipment and products. In order to supply power to the facility, EWEB owned and maintained an Interconnection Facility that housed its electrical equipment. Part of the Interconnection Facility was located on Hynix's property, but access to that area was restricted without an EWEB escort.

The parties had entered into similar agreements in 1996 and 2001. However, the parties negotiated a modification to the limitation of liability term in Section IX.A of the 2006 agreement. That section states:

"It shall be expressly understood and agreed to by the Parties as follows:

"1. **Interruption of Service**: Whenever necessary for the purpose of making emergency repairs to its system and, where appropriate giving due consideration to the nature and sensitivity of [Hynix's] operations, EWEB shall have the right to temporarily suspend the delivery of electrical energy, but, in such cases, EWEB will give reasonable prior notice if circumstances permit. Whenever an interruption of service can be planned, EWEB will schedule its activities by mutual agreement with [Hynix]. EWEB will make every effort to avoid an interruption of service but should an interruption be required, EWEB will endeavor to make the duration as short as practicable under safe operating conditions.

"2. EWEB cannot and will not guarantee constant or uninterrupted delivery of electric service and *shall have no liability to [Hynix] for any interruption, suspension, curtailment, or fluctuation in electric service or for any loss or damage caused thereby when such interruption, suspension, curtailment or fluctuation results from causes beyond EWEB's reasonable control* including, but not limited to, accident or casualty, fire, flood, drought, wind, action of the elements,

court orders, litigation, breakdown of or damage to facilities of EWEB or of third parties, acts of God, strikes or other labor disputes, civil, military or governmental authority, electrical disturbances originating on or transmitted through electrical systems with which EWEB's system is interconnected and acts or omissions of third parties.

"3. **Damage Resulting from Interruptions or Variations in Service**: *Neither EWEB nor [Hynix] shall be liable to the other or to any third party for the direct or consequential damages or claim of damage attributable to any interruption, fluctuation, outage, change in voltage, or other electric power disturbance.* \* \* \*"

(Boldface in original; emphases added.)

In December 2007, Hynix learned about a water leak in the roof of the Interconnection Facility. EWEB had been aware that there was a leak in the roof for more than a year, and had placed a tarp over the electrical equipment in the vicinity of the leak. The following day, upon Hynix's request, an EWEB employee began installing a drip guard above the equipment. EWEB did not schedule a planned interruption of service and did not provide Hynix with advance notice of a power interruption. While EWEB's employees were installing the drip guard, an unplanned loss of electrical power occurred which resulted in damage to Hynix's products and equipment.

Plaintiffs brought a breach of contract action against EWEB and ultimately moved for partial summary judgment, arguing that, as a matter of law, EWEB was contractually liable to Hynix for damages caused by power interruptions that were within EWEB's reasonable control, and that the 2007 power outage was within EWEB's reasonable control. Plaintiffs argued that a broad reading of section IX.A3—that EWEB is not liable for *any* power interruptions—would render the specific waivers of liability in IX.A1 and IX.A2 superfluous and meaningless. Consequently, in their view, section IX.A3 should be construed to apply only to power interruptions that are (1) intentional but brief and for the purposes of emergency repairs, or (2) the result of causes beyond EWEB's reasonable control. According to plaintiffs, in order to give meaning and effect to all of the contract's provisions, the specific waivers of liability should

control and, accordingly, as a matter of law, EWEB was liable to Hynix for damages caused by power outages within EWEB's reasonable control.

Plaintiffs went on to argue that, even viewing the evidence in the light most favorable to EWEB, the power outage in question was within EWEB's reasonable control because the differential relay that tripped and caused the interruption was owned, maintained, and serviced by EWEB, and was located in the part of the facility that was under EWEB's exclusive control. They noted that EWEB had known about the leak for more than a year and had responded by placing a tarp over the affected equipment. Further, after Hynix was informed about the leak, EWEB made the decision to install a drip guard without first scheduling a planned interruption of service and without providing notice to Hynix of a temporary power outage. Ultimately, the power outage was caused when an EWEB employee drilled a hole and caused a differential relay to trip. That cause was not, therefore, outside of EWEB's reasonable control, according to plaintiffs.

EWEB filed a cross-motion for summary judgment, arguing that, as a matter of law, the agreement relieved EWEB from liability for damages that might result from *any* interruption, suspension, curtailment, or fluctuation in electric service. EWEB relied on a strict reading of section IX.A3, which expresses a broad waiver of liability, for both parties, for any power interruption. Thus, EWEB argued, plaintiffs unambiguously released EWEB from any liability for damages caused by the 2007 outage. The trial court denied plaintiffs' motion for partial summary judgment and granted EWEB's cross-motion for summary judgment.

On appeal, plaintiffs raise three assignments of error. The first and third assignments concern the trial court's ruling that, as a matter of law, the agreement relieved EWEB from liability for damages resulting from the 2007 power outage. Plaintiffs renew their argument that section IX.A does not unambiguously relieve EWEB from liability in the event of *any* power interruption, but rather only for interruptions that result from causes that are not within EWEB's reasonable control. Moreover, plaintiffs argue, section IX.A2

unambiguously provides that EWEB *is* liable for damages occurring as a result of a power outage that, like the 2007 outage, *is* within EWEB's reasonable control.

EWEB responds that section IX.A2 does not explicitly assign liability for power outages within EWEB's reasonable control, but rather outlines some instances in which EWEB is not liable for damages. EWEB argues that "[a]n explicit statement that EWEB is not liable for circumstances outside of its control, such as an accident, does not create an affirmative contractual promise to be liable if some basis of control is argued." EWEB points to section IX.A3, contending that it unambiguously releases EWEB from liability for any interruption of power, no matter the cause. EWEB argues, in the alternative, that summary judgment was appropriate because, even viewing the evidence in the light most favorable to plaintiffs, they failed to prove causation or to establish that the 2007 power outage was within EWEB's reasonable control. We agree with EWEB that section IX.A3 unambiguously releases EWEB from liability for the 2007 power outage.

In construing contractual provisions, we apply the three-step process set out in *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997). First, we examine the disputed text in the context of the document as a whole. If the provision is clear, then we construe the terms as a matter of law. *Id.* at 361. If the text is ambiguous, however, the second step is to examine extrinsic evidence of the parties' intent. *Id.* at 363-64. If the ambiguity is still not resolved, the third step is to apply relevant maxims of contract construction. *Id.* at 364. Whether a contractual provision is ambiguous is a legal question. *Id.* at 361. "'A contract provision is ambiguous if it is susceptible to two or more plausible interpretations—that is, two or more sensible and reasonable interpretations[.]'" *PacifiCorp v. SimplexGrinnell, LP*, 256 Or App 665, 670, 303 P3d 949, *adh'd to on recons as modified*, 257 Or App 677, 310 P3d 672, *rev den*, 354 Or 389 (2013) (quoting *Emmert v. No Problem Harry, Inc.*, 222 Or App 151, 157, 192 P3d 844 (2008)).

Both parties argue that section IX.A is unambiguous but they argue for conflicting interpretations of that section. We begin with plaintiffs' interpretation. They argue

that section IX.A unambiguously provides that EWEB will be liable for power interruptions within its reasonable control. We disagree. Section IX.A2 provides that EWEB "cannot and will not guarantee constant or uninterrupted delivery of electric service" and states that EWEB shall have "no liability" for interruptions of power when the interruption results from causes beyond EWEB's reasonable control. Section IX.A2 then lists several examples of causes outside of EWEB's reasonable control. On its face, section IX.A2 provides only for a limitation on liability, rather than an affirmative assumption of liability on EWEB's part.

EWEB correctly notes that, in order for us to construe section IX.A2 as containing an affirmative assumption of liability for outages within EWEB's reasonable control, we first must find such an assumption by negative inference. In other words, we must conclude that the statement that EWEB shall have no liability for a power interruption "when such interruption, suspension, curtailment or fluctuation results from causes beyond EWEB's reasonable control" necessarily implies that EWEB promises to be liable for a power interruption when such interruption results from causes within EWEB's reasonable control. However, "[a]lthough a court may declare what is implicit in the terms of a contract, it may not create an entirely new obligation under the guise of 'necessary implication.'" *Morrow v. Red Shield Ins. Co.*, 212 Or App 653, 661, 159 P3d 384 (2007). Under the doctrine of necessary implication, the law "will imply a provision in a contract" only when it "is necessary to carry out the purpose for which the contract was made." *Id.* at 661 (citing *Card v. Stirnweis*, 232 Or 123, 134, 374 P2d 472 (1962)). An affirmative promise of liability concerning power outages within EWEB's reasonable control is not necessary to carry out the purpose of the Power Sales Agreement, which is for EWEB to supply, and Hynix to pay for, electricity; thus, it is not a term that must necessarily be implied in the agreement as a matter of law. We therefore reject plaintiffs' contention that the agreement unambiguously assigns liability to EWEB for outages within its reasonable control.

Furthermore, upon examination of the disputed text in the context of the agreement as a whole, we cannot conclude that plaintiffs' interpretation is a plausible one.

Such a conclusion would run afoul of ORS 42.230, which instructs that, "[i]n the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." That is so because adopting plaintiffs' posited interpretation of section IX.A2 would require ignoring section IX.A3 altogether. Section IX.A3 provides that neither party "shall be liable *** for the direct or consequential damages *** attributable to any interruption, fluctuation, outage, change in voltage, or other electric power disturbance." Accordingly, we conclude that the trial court did not err in denying plaintiff's motion for partial summary judgment.

We next turn to EWEB's argument that the text of section IX.A3 unambiguously releases it from liability for any power interruption, including the 2007 power outage. EWEB contends that, because the contractual terms in both sections IX.A2 and IX.A3 are phrased in the negative, they cannot be read to compel an affirmative contractual duty or an affirmative promise to be liable for any damages caused by any power outages. Rather, the provisions should be read together as a narrow and a broad limitation of liability, and not as two conflicting provisions—and summary judgment was appropriate because section IX.A3 contains a broad and unambiguous disclaimer of all contractual liability for "direct or consequential damages or claim of damage attributable to any *** outage ***," which necessarily includes the 2007 outage.

We agree with EWEB that section IX.A3 unambiguously releases it from liability for the 2007 power outage. That section explicitly states that neither party shall be liable to the other for "*any* interruption, fluctuation, outage, change in voltage, or other electric power disturbance." (Emphasis added.) That broad waiver of liability is unambiguous. Plaintiffs contend that there is a conflict between sections IX.A2 and IX.A3, and that a broad reading of section IX.A3 renders section IX.A2 "superfluous and meaningless." However, we find no conflict between the two clauses. Section IX.A3 provides a general limitation of liability for all

parties, while section IX.A2 enumerates specific instances where EWEB shall have no liability. Because we do not find that section IX.A2 creates an affirmative promise of liability for power outages whose causes are within EWEB's reasonable control, both provisions can be read without conflict. Thus, there is no reason for the specific provision to supersede or negate the general provision. *See, e.g., Oregon Southwest, LLC v. Kvaternik,* 214 Or App 404, 409, 164 P3d 1226 (2007), *rev den,* 344 Or 390 (2008) (declining to give effect to a narrow provision while ignoring a general provision when the two provisions were not in conflict). Accordingly, section IX.A3's limitation of liability covers the 2007 outage, thereby releasing EWEB from any liability for direct or consequential damages attributable to that outage.

We therefore conclude that the trial court did not err, as a matter of law, in granting EWEB's motion for summary judgment on the basis that the 2007 outage fell within section IX.A3's limitation of liability.

Affirmed.